**WATKINS et al. v. JESTER et al.**

No. 12891—Opinion Filed Oct. 7, 1924.

**1. Guardian and Ward — Fraud in Guardian's Sale.**

In a suit in equity, where it is sought to invalidate a guardian sale for fraud, only fraud extrinsic to the matters determined in the county court may be considered.

**2. Judgment — "Collateral Attack."**

A collateral attack on a judicial proceeding is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law; that is, in some other way than by appeal, writ of error, certiorari, or motion for a new trial.

**3. Judgment—"Direct Attack."**

A direct attack upon a judgment or judicial proceeding is one authorized by law or equity, where the primary object of the action is to vacate such judgment.

**4. Guardian and Ward — Collateral Attack on Judgment — Evidence as to Minor's Residence.**

This court has held repeatedly that parol evidence was incompetent to prove that the minor's residence was in a county other than where the appointment was made, in a collateral attack upon the judgment.

**5. Same — Evidence as to Minor's Custody and Resident Relatives.**

The record of the county court cannot be collaterally attacked by evidence aliunde, that the minor was at the time in the care of some one and had relatives residing in the county.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Carter County: Thomas W. Champion, Judge.

This action was brought in the district court of Carter county by the defendants in error, as plaintiffs, against the plaintiffs in error, as defendants, to recover certain lands, to set aside a guardian's sale thereof,

and subsequent conveyances, and to quiet title. The parties will be referred to as they appeared in the trial court. The case involves 200 acres of land scattered over four different counties and involves the allotment of Stella Miller, a Chickasaw Indian, who died in 1911, and was inherited by plaintiffs, sister and brothers of Stella Miller, who were the minors. The land was sold by the guardian at public auction under the order of the county court of Marshall county, and the defendant, J. A. Keltner, became the purchaser at said sale for the sum of $1,500 cash, and he thereafter conveyed the lands to the other defendants. It is the sale of these lands, which is sought to be set aside, on account of irregularities in the appointment of guardian, and defects in the sale proceedings, and fraud.

In 1904, one J. W. Morris was appointed guardian of two of the plaintiffs, Annie Miller, who thereafter became Annie Jester, and Hulbert Miller, by the clerk of the United States court for the Southern District of the Indian Territory, of Tishomingo, the usual petition and bond being filed and letters issued, all dated September 15, 1904. This appointment is attacked on the ground of no notice having been given.

In 1907, J. W. Morris was appointed guardian of the other plaintiff, Joseph Miller, by the county court of Johnston county. This appointment is attacked on the ground that this minor was then a resident of Marshall county. Thereafter the two guardianship proceedings were consolidated, and in 1908, removed to Marshall county.

The parents of these minors died, the mother in 1904 and the father in 1905, and the minors thereafter lived with their grandmother, Wycy Wolf, in Marshall county, and at times with Andrew and Sina Beam, who were some kin to the minors and lived near Randolph in Johnston county. The children were sent away to school as they became of school age and were away at school for something like six years. After removal of cause to Marshall county, where it still remains, a number of guardians were appointed at different times by the county court of that county. After Morris resigned, W. T. Barry was appointed and died some time thereafter; J. M. Riddle was appointed and resigned some time thereafter; and then W. S. Allen was appointed, who died sometime thereafter; then E. J. Bowers was appointed and thereafter resigned; then the present guardian, McDuffey, was appointed; and each of said guardians transacted a large amount of business for said minors; and the record is quite voluminous. The

appointment of J. M. Riddle is attacked on the ground that the minors resided in Johnston county; and the appointment of W. S. Allen because no notice was given and on the further ground that the petition of Allen to be appointed recited that the minors were residents of Johnston county. Soon after his appointment, Allen filed a petition to remove the cause back to Johnston county, but upon hearing the court found that the minors were residents of Marshall county and denied the petition for removal. The land in controversy was sold by W. S. Allen, as guardian, and the sale proceedings are not attacked generally, but it is claimed that the sale of the ten acres in Carter county was void because no notice of sale was posted or published in Carter county. The notices given in other counties fully described all the land, sought to be sold, including the 10 acres in Carter county.

The claim of fraud is based on the fact that the petition to sell real estate was filed on August 30, 1913, while on August 5th, previously, the guardian had loaned to J. A. Keltner, who afterwards became the purchaser of the land, the sum of $1,500 on personal security, claiming that this evaded the statute, which requires a bond or mortgage for deferred payments on the purchase of a minor's real estate. The said loan, together with three other loans to Keltner on personal and real estate security, were both before and after the sale, and all were authorized by orders of the county court, and were all paid in full. There is no objection to the amount of consideration paid for the land and the receipt of same is admitted.

The defendants contend that there was no fraud in the loaning of the money to Keltner; that the same was regular in every respect, and if there were any it would have been of no avail against them, who are innocent bona fide purchasers without notice and for a valuable consideration; that the claims of the plaintiffs constitute a collateral attack upon the judgments of the county courts; if notice of sale was omitted in Carter county, it was a mere irregularity, cured by the order of confirmation; that the appointments of the several guardians were valid, but in regard to what had happened theretofore, the appointment of Riddle complied with all the requirements and gave the court jurisdiction of the proceedings, if it did not already have it; that the minor plaintiffs cannot recover without repayment of the purchase price, which has not been tendered; that Annie Jester, an adult, is estopped to claim a recovery of the land because of having accepted and retained the

proceeds from the sale thereof; that their action is in ejectment and can apply only to the land in Carter county; and deny generally the allegations of the plaintiffs' petition.

The trial court found in favor of the plaintiffs, from which judgment this appeal is prosecuted. Since lodging the case in this court, the defendant in error, plaintiff below, Annie Jester, has died, and the action revived, by order of this court in the names of her heirs. On the trial of the case F. E. Watkins, W. E. Connor, A. D. Horton and J. J. Large, the present owners of the land in controversy, testified that they had no notice of any fraud, if there was any; that they had their attorneys pass upon the title, who pronounced it good, and that they each bought the respective parts of said land owned by them in good faith and for a valuable consideration, without any knowledge whatever of any fraud or irregularity in the probate court proceedings. The record of the probate court showing the appointment of the various guardians was introduced in evidence. The publication notices for the sale of the land, and the proof of posting notices and proof of publication of notices in the different counties was all introduced in evidence; the additional sales bond required of the guardians and the return of the sale signed by the court, and the notices for hearing of return of sale, with the notices thereof and the proof of posting same, were introduced in evidence, and the order confirming the sale was also introduced in evidence; and the order authorizing the court to make the four loans to J. A. Keltner was introduced in evidence. The record of the appointment of John M. Riddle, including the petition for appointment; the order of the judge making the appointment, and the order fixing the amount of his bond were all introduced in evidence, and then the deeds in the chain of title of the defendants to the land in controversy were all introduced in evidence, including the guardian's deed to J. A. Keltner, and the guardian's report filed about the time Annie Miller Jester, one of the plaintiffs in this case, came of age and received her distributive share of the estate. After both parties rested their case and argued it to the court, the court made its findings of fact and conclusions of law and entered judgment in favor of the plaintiffs setting aside the guardian's sale and the deed, and quieting the title in the plaintiffs. A motion for a new trial was made and overruled, and the case appealed to this court, and is now before the court on seven specific assignments of error.

W. Y. Dilley, for plaintiffs in error.

Cruce & Potter, for defendants in error.

Opinion by MAXEY, C. There are two propositions insisted on by the plaintiffs in error for a reversal of the judgment of the trial court in this case: (1) Fraud in loaning money to J. A. Keltner, without real estate security, as provided by statute; and (2) Counsel for plaintiffs in error insists that this is a collateral attack on the judgment and proceedings of the trial court. We will first dispose of the question of fraud: The record shows that the guardian was permitted and authorized by the order of the court to make three separate loans to J. A. Keltner on personal security. Just how these loans to Keltner under order of the county court affect the sale of the land in controversy is something we cannot exactly understand. It is true that Keltner became the purchaser of the land in question, but the record also shows that Keltner paid all of the loans that he had obtained from the guardian in full, and that he paid cash for the lands he bought at the guardian's sale. This is the only allegation in the petition charging fraud, and unless this allegation can be sustained and it is held that the making of these loans to Keltner, who became the purchaser at the sale of the land, was a fraud that vitiated the whole proceedings, then that part of plaintiffs' case must fail.

In the case of Gray v. McKnight, 75 Okla. 268, 183 Pac. 489, the court said:

"The fraud which will vitiate a judgment in an independent proceeding must be extraneous to the issues and such as would deprive the party of a fair oportunity to present his case."

Again in the case of Wray v. Howard, 79 Okla. 223, 192 Pac. 584, in the third paragraph of the syllabus, the court said:

"Where a minor's property has been 'sold at a void or fraudulent guardian's sale, and a guardian's deed issued and filed of record, and such grantee and those claiming under him remain continuously in possession thereof, thereafter the minor's cause of action is not barred by reason of subdivision 2, sec. 4655, Rev. Laws 1910, within five years after the recording of the deed, but by virtue of sec. 4656, Rev. Laws 1910, the minor may begin an action to set aside said sale at any time prior to two years after his legal disability is removed."

To the same effect is the case of Hollingshead v. Hollingshead, 79 Okla. 292, 193 Pac. 412. Section 1482, Comp. Stat. 1921, provides:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein; and the county court may make such orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

In the case of Ross v. Groom, 90 Okla. 270, 217 Pac. 480, this court said:

"In a suit in equity, where it is sought to invalidate a guardian sale for fraud, only fraud extrinsic to the matter determined in the county court may be considered."

Was the loaning of these various amounts of money to Keltner by the guardian, with the approval of the court, such a fraud as would vitiate the sale of land where Keltner became the purchaser? We do not think so. Part of this money was loaned to Keltner by the guardian prior to the sale, and part of it after the sale. He paid cash for the land he bought and all loans that were made to Keltner were paid; and we do not think there was any fraud in the transaction. If anything, it would only be an irregularity; and if Keltner had failed to pay the notes, the guardian would have been liable to the wards on his official bond for the payment of the various loans. We do not think under the holding of this court, that such irregularity would furnish a sufficient foundation for a court of equity to set aside the guardian sales on account of these loans. Cabell v. McLish, 61 Okla. 224, 160 Pac. 592. We are, therefore of the opinion that the evidence in support of the allegation of fraud fails, so far as the loans to Keltner are concerned.

There are other matters in the record that plaintiffs below insist on. These consist in irregularity in appointment of the various guardians, and it may be that the first guardian that was appointed by the United States Court for the Southern District of the Indian Territory was somewhat irregular, but there is no complaint about anything that he did while guardian; and after statehood, the guardianship was removed to Marshall county and Morris, the first guardian, resigned, and the county court of Marshall county appointed a guardian. This guardian soon after died or resigned, and another guardian was appointed, who thereafter resigned, and another one was appointed. The third one being a man by the name of Allen, and it was Allen that filed the petition for

the sale of the real estate in question and conducted the sale. There is no complaint made of the petition for an order to sell nor the order authorizing the sale nor the confirmation, except it is alleged that the guardian failed to post the notices of the sale required by statute in Carter county where ten acres of land was situated. The evidence as to whether there were notices posted in Carter county is not very satisfactory, but if we concede that notices were not posted in Carter county, the record shows that the land in Carter county was included in the notices published in the newspaper, and the failure to post notices in Carter county would be a mere irregularity and would not void the sale on that account. There is no complaint that the land did not bring a fair price, and that the guardian received the money for it.

This brings us to the question of collateral attack. The only allegations that would give a court of equity jurisdiction to set aside the sale are those allegations of fraud, and if it be held that the allegations of fraud are not sustained, then the case would stand as a collateral attack, on the judgment and proceedings of the county court. There has been so much written by this court on the subject of collateral attack that it ought to be easily settled whether this is a collateral attack on the proceedings of the county court or a direct attack as contended for by counsel for defendants in error. In the case of Pettis v. Johnston, 78 Okla. 277, 190 Pac. 681, this court held:

"A collateral attack on a judicial proceeding is an attempt to avoid, defeat or evade it, or to deny its force and effect in some manner not provided by law; that is, in some other way than by appeal, writ of error, certiorari, or motion for a new trial. We are not attempting to name all the methods falling within the scope of a direct attack, but in this case the judgment in the foreclosure proceedings is not assailed by any method prescribed by law for correcting erroneous judgments. A successful collateral attack on a judgment does not operate to set aside or vacate such judgment—the judgment is merely avoided or evaded. Morrill v. Morrill, 20 Or. 96, 25 Pac. 362, 11 L. R. A. 155. 23 Am. St. Rep. 95. Where a judgment forms a link in a litigant's chain of title, and the opposing party, plaintiff or defendant, in his pleadings, or by objecting to its introduction in evidence, assails its validity for defects in the record on which the judgment is based, the attack is collateral and not direct, 23 Cyc. 1063-1064, and authorities; also Bruno v. Getzelman, 70 Okla. 143, 173 Pac. 850, and 15 Standard Proc. p. 389. A judgment is good against collateral attack unless it is absolutely void for want of jurisdiction in the court rendering the judg-

ment to decide any of the questions. Van Fleet on Col. Attack, Sec. 16; Moffer v. Jones, 67 Okla. 171, 169 Pac. 652."

In Bruno v. Getzelman, 70 Okla. 143, 173 Pac. 850, cited in above case, it was held:

"A 'collateral attack' on a judicial proceeding is an attempt to avoid, defeat, or evade it, or deny its force and effect in some incidental proceeding not provided by law for the express purpose of attacking it. In this action the plaintiffs seek to recover possession of the land in controversy, damages for withholding the same, and mesne profits. They seek to avoid and deny the force and effect of the judgments complained of as an incident to the main purpose of the action, the recovery of the land. This action therefore comes squarely within the definition of 'collateral attack' above quoted."

The primary object of the case at bar is not to vacate the judgments attacked, but to recover the land. Tiger v. Drumright, 95 Okla. 174, 217 Pac. 455, was an action to cancel a guardian's deed on account of improper petition to sell, defective appraisement, and insufficient notice of sale; Moffer v. Jones, 67 Okla. 171, 169 Pac. 652, was an action to set aside guardian's deed and sale because of insufficient petition and sale for less than 90 per cent. of appraised value; Hathaway v. Hoffman, 53 Okla. 72, 153 Pac. 184, was a case in ejectment and to quiet title, attacking as erroneous the appointment of the guardian who made the sale; Johnson v. Furchtbar, 96 Okla. 114, 220 Pac. 612, was an action to recover land, attacking a guardian's sale for defects in the appointment of the guardian, and lack of seal on court orders. Every one of these cases was held by this court to be a collateral attack and the title was upheld in every instance. In Johnston v. Furchtbar, supra, some of the same objections were made to the guardianship proceedings as made in the case at bar, and the following extract from the opinion in that case is pertinent here:

"The plaintiffs next contend that this is not a collateral attack on the judgment of the county court, but is a direct attack thereon * * * (Quoting McIntosh v. Holtgrave, 79 Okla. 63, 191 Pac. 739). This proceeding is not one provided by law for attacking judgments, and, hence, is not a direct attack. It is argued by the plaintiff, however, that there are sufficient allegations of fraud in the petition to constitute this an equitable proceeding to set aside a judgment for fraud, and can, therefore, be maintained for that reason. In the above case and in numerous other cases, this court has recognized equitable proceedings to vacate, judgments procured through fraud, and in several cases such attacks have been

denominated direct attacks, and we think that it may now be conceded that such a proceeding is recognized by this court as a direct attack. The petition in the instant case, however, contains no allegations of extrinsic fraud. The allegations of fraud were all as to matters which were before the county court for determination and which were necessarily determined by the court when the order appointing the guardian was made, and it has been repeatedly held that fraud of this character is not sufficient to give a court of equity jurisdiction to set aside a judgment."

The attack on the appointment of guardian is that of the appointment of J. W. Morris, by the United States Court in the Indian Territory in September, 1904, which is alleged to be void because said Morris was a stranger and no notice was given of such appointment, although relatives were living in the county and had the care of the said minors. The foregoing appointment it is alleged was void because of a lack of jurisdiction to make the appointment, and it is claimed that the county court of Marshall county did not acquire jurisdiction by virtue of transfer of the proceedings to that court, and all orders and proceedings of such court thereafter were void; that the appointment of W. S. Allen in succession is alleged to be void because the petition for appointment filed by said guardian and a waiver and request by relatives state that the minors were residents of Johnston county at that time; that the sale of the ten acres of land situated in Carter county being a part of the land sold is alleged to be void because no notice of sale was posted in Carter county. The case of Hathaway v. Hoffman, supra, is similar in a great many respects to this case, and we quote from it the following:

"Where, in an action of ejectment joined with one to clear title, plaintiffs, in order to prove title in themselves, assailed the validity of the record of the county court appointing for them a guardian, who, as such, pursuant to an order of the court, had subsequently sold and conveyed the land in controversy to defendant's grantee' held, that such was a collateral attack, and that the record being one of a court of general jurisdiction as to probate matters, could not be impeached by evidence aliunde.

"Where, assailing the record of a county court, plaintiff introduced parol evidence aliunde, over objection, that the minors for whom a guardian had been appointed by the court resided at the time of the appointment in a county other than the county in which the appointment was made, held, that the court did right, in directing a verdict for the defendant, to lay that evidence out of the case and in effect held that such

was incompetent and without probative force to impeach the validity of the record.

"The appointment of a guardian for minors by a county court imports jurisdiction in the court so to do, and it will be inferred from the fact that such an appointment was made that all the facts necessary to vest the court with jurisdiction to make the appointment had been found to exist before the same was made."

There is no irregularity in the appointment of W. S. Allen as guardian because the record shows that Allen was appointed at the request of the relatives of the minors, and on the question of residence of minors, the record shows that they resided with their grandmother, Wycy Wolf, who lived in Marshall county a part of the time, and with another relative by the name of Beam who resided in Johnston county. They were all away at school a great part of the time—I think the record shows that they were all absent at school for about six years of the time, and when they came home they would stay with some relative, either in Johnston county or Marshall county. There was a petition filed in the county court of Marshall county to remove the case back to Johnston county. A hearing was had on this petition on August 7, 1913, and the county court refused the removal and entered judgment on said petition with the following recital in the judgment:

"The legal residence and domicile of said minors and each of them is Marshall county, Okla., and that while said minors at the times mentioned in the petition for removal herein were temporarily staying with certain of their relatives in Johnston county, Okla., their legal residence and domicile had not and has not now been changed from Marshall county to Johnston county, Okla.; and that said minors are now and have been at all times since said proceeding was removed and transferred from Johnston county to Marshall county, Okla., legal residents of and domiciled in Marshall county, Okla." (Defts. Ex. 15 and 16, C.-M. 197-201.)

The court ordered the land sold in separate tracts or in bulk, as the guardian thought best for the interest of the minors. The land was sold to J. A. Keltner for a fair consideration of $1,500, for the entire 200 acres. As before stated, there is no complaint that the land did not bring what it was reasonably worth at the time, and the sale was regularly approved by the court. While there may have been some irregularities in these long guardianship proceedings, there is nothing in our judgment that can be reached by this proceeding. We do not think the evidence offered sufficient to sustain the allegation of fraud,

and that the proceeding under the decision of this court is a collateral attack on the judgment of the county court of Marshall county, and that it cannot be successfully attacked under this proceeding.

We, therefore, conclude that the findings and the judgment of the trial court are erroneous, and that the same should be reversed and set aside, with direction to the court below to enter judgment for the plaintiffs in error and deny the relief prayed for by the defendants in error.

By the Court: It is so ordered.