Carolyn Skelly BURFORD, Plaintiff in Error,

v.

Joan Skelly STUART, Surviving Executrix of the Estate of William Grove Skelly, deceased, Defendant in Error.

No. 40842.

Supreme Court of Oklahoma.
March 8, 1966.

V. P. Crowe, Allen D. Evans, Crowe, Boxley, Dunlevy, Thweatt, Swinford & Johnson, Oklahoma City, for plaintiff in error.

E. J. Doerner, R. Dobie Langenkamp, Tulsa, for defendant in error.

PER CURIAM.

This is an appeal from the District Court of Tulsa County, Oklahoma, wherein that court discharged Joan Skelly Stuart as surviving Executrix of the Estate of William Grove Skelly, deceased, and affirmed a like prior order of the County Court of Tulsa County.

On November 10th, 1961, a final degree was entered in the County Court of Tulsa County approving the Final Account of the Executrix determining the persons entitled to the estate and directing distribution of

the estate to them. Plaintiff in error was represented at that hearing by her then counsel. It does not appear that any objection was filed to that account or the distribution ordered and no appeal was taken from that decree. Thereafter the Executrix filed her Second Supplement to Final Account reporting her actions in carrying out the final decree of distribution which Second Supplement came on for hearing before the County Court on July 6th, 1962. At that hearing the plaintiff in error was represented by her then counsel. The order of the County Court recites:

> "It further appearing that said Executrix has fully accounted for all property, funds and money received by her since the Order Approving Final Account and First Supplement thereto and she has performed all of the acts lawfully required of her under the Decree of Distribution herein.

> "IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the Second Supplement to Final Account of the said Surviving Executrix be, and the same is, hereby approved.

> "Now on request of Carolyn Skelly Burford in open Court that the Application of Surviving Executrix for Discharge be passed so as to permit the said Carolyn Skelly Burford to make written inquiry of the Executrix concerning matters pertaining to the above styled estate.

> "IT IS HEREBY ORERED, ADJUDGED AND DECREED that the hearing on the Application of Surviving Executrix for Discharge be, and the same is, hereby passed until 9:30 o'clock A.M. August 3, 1962.

> "IT IS FURTHER ORDERED that any inquiries which the said Carolyn Skelly Burford may desire to make of said Surviving Executrix concerning the above styled estate, be made in writing, addressed to said Surviving Executrix, on or before July 25, 1962."

No appeal was prosecuted from this order.

Thereafter, and on August 24th, 1962, plaintiff in error through her counsel filed an "Objections to Discharge of Executrix". On the same day, those objections were heard by the County Court in a proceeding in which the counsel for both parties were present and participated, and an order was entered denying the objections and discharging Joan Skelly Stuart as Executrix. From that order of August 24th, 1962, the plaintiff in error prosecuted an appeal to the District Court of Tulsa County on both questions of law and fact.

On appeal to the District Court, the order of the County Court discharging the surviving executrix was affirmed. Plaintiff in error appeals from the order overruling her motion for a new trial.

Plaintiff in error first contends the trial court erred in refusing to require the executrix to bring an action to recover for the estate an interest in certain real estate situated in Rogers County, Oklahoma, allegedly belonging to the deceased at the time of his death.

The record discloses that the real estate was conveyed by Robert Hays Murphy and wife and R. F. Murphy and wife to Big Lake Club of Tulsa, Oklahoma, a corporation, by deeds dated December 24th, 1928, and April 25th, 1929. Thereafter, on March 20th, 1940, W. G. Skelly joined with eleven others in a Declaration of Trust which recited that each of them was the owner of a one-twelfth interest in the lands by virtue of a conveyance to them by the Big Lake Club. The declaration appointed Glenn A. Campbell, as trustee, agent and attorney in fact, with wide powers which included the power to sell and convey the lands or any part thereof and to collect and receive the proceeds of any such sale. The declaration further empowered the trustee to collect all rents and revenues accruing from the lands and to pay over the same to the Big Lake Club after discharging the taxes and other expenses of operation. The trustee, agent and attorney in fact, was specially authorized to sell,

convey and dispose of the beneficial interest of any one or more of the creators to any person or persons subject only to the approval of a majority of the other beneficial owners.

The record further discloses that on December 22nd, 1939, W. G. Skelly by letter addressed to Big Lake Club, attention Mr. G. R. McCullough, President, advised that he had disposed of his stock in Big Lake Club to Harold C. Stuart and directed the cancellation of his stock certificate and the issuance of a certificate for a like amount of shares to Mr. Stuart. On January 25, 1963, Glenn A. Campbell, as trustee under the trust heretofore referred to, conveyed the lands to certain grantees, Harold C. Stuart being one of the grantees so named. On the same day a second Declaration of Trust was executed by Mr. Stuart and ten other persons reciting that each of them owned a one-eleventh interest in the lands and naming Glenn A. Campbell as trustee, agent and attorney in fact, for all of them with relation to the lands by them conveyed to Campbell as their trustee. This second trust instrument conferred on the trustee powers similar if not identical with those conferred by the first declaration including the power to sell and convey the lands in whole or in part and the separate beneficial interests of the creators of the trust. The grantees in the deed from Glenn A. Campbell, as trustee, all executed the second declaration of trust and joined by other persons executed the deed back to Glenn A. Campbell as trustee. Glenn A. Campbell was the only person who executed both trust agreements.

The only witness testifying in this cause was Harold C. Stuart. In substance he testified that the title to the lands in 1939 was in Big Lake Club, a corporation; that the stock of the corporation was owned in equal shares by twelve persons, Mr. Skelly and eleven others; that it was used for farm land and not for corporate purposes; that it was agreed that under the Oklahoma escheat statutes the land should be conveyed to the stockholders and by them to a trustee; that Mr. Skelly had, prior to the execution of the first trust declaration, transferred his stock to the witness, Stuart, but through inadvertence and mistake he was named as one of the creators of the trust and executed the first trust declaration; that subsequent to the transfer of the stock to Stuart, he at all times acted as a stockholder of the corporation, attended all meetings of stockholders and beneficiaries of the trust and paid his pro rata part of taxes and other expense assessed against the one-twelfth beneficial interest. Stuart further testified that in 1960 all the original beneficiaries were deceased except one and that on advice of counsel the trustee conveyed the lands to the present members of the corporation and they, in turn, executed the second trust declaration. On the same day the Big Lake Club, a corporation, by quit-claim deed conveyed the lands to Glenn A. Campbell as Trustee under the second Declaration of Trust for the benefit of the eleven persons named therein in equal shares.

From the evidence presented, if Mr. Skelly actually had any interest in the land at the time of his death (and that matter is not presented for decision here) such was an equitable interest only. Possession and control of the land was vested in the trustee. The executrices had no right of possession as contemplated by Title 58 O.S. 1961, Sec. 251, which they could exercise.

Under Title 58 O.S.1961, Sec. 290, the heirs or devisees of William Grove Skelly, deceased, may maintain an action to quiet title to the interest in the real property in question in their own names without joinder of the executrix. See Turner v. Johnson, 86 Okl. 196, 207 P. 555, wherein we construed the above section and held that by virtue of it, the heirs or devisees may maintain an action to quiet title to real estate inherited by them against any one except the executor or administrator without the executor or administrator joining in the suit.

The interest, if any, of W. G. Skelly in the lands was that of a cestui que

trust, and, on his death would, if it existed, descend directly to his heirs or devisees. See Mendenhall v. Walters, 53 Okl. 598, 157 P. 732; and Lyons v. Lyons, 182 Okl. 108, 76 P.2d 887. And, if Skelly had an interest in the lands at the time of his death, that interest passed to his devisees under the provisions of Title 58 O.S. 1961, Sec. 692.1, although not specifically described in the final decree of distribution.

 In view of the evidence summarized above and since the plaintiff in error may, in her own name, maintain any action for possession or to quiet title to the lands, it is our opinion that the trial court did not commit reversible error in failing to direct the executrix to bring an action to recover the purported interest of W. G. Skelly, deceased, therein.

Plaintiff in error in her second assignment of error contends the District Court of Tulsa County erred in refusing to require the surviving executrix to account to said estate for proceeds from a certain policy of insurance issued by Northwestern Mutual Life Insurance Company upon the life of William Grove Skelly, deceased, to which the plaintiff in error as contingent beneficiary was entitled.

From the evidence offered by plaintiff in error it appears that Mr. Skelly assigned eleven insurance policies on his life in the aggregate face amount of $747,000.00 to the Union Bank of Commerce of Cleveland, Ohio, as security for indebtedness to that bank which on July 5th, 1957, and subsequent to his death amounted to approximately $261,166.39. Among the policies so assigned to the bank was one issued by the Northwestern Mutual Life Insurance Company in the face amount of $10,000.00. The policy originally named Mrs. Gertrude F. Skelly, wife of the deceased, the primary beneficiary and named his daughters, Carolyn Mary Skelly, plaintiff in error, and Joanne Jane Skelly, the surviving executrix, as contingent beneficiaries. In connection with the assignment of the policy to the bank, Mr. Skelly revoked the designation of beneficiaries. However, this revocation provided that any designation of beneficiaries that was revoked shall be restored to full force and effect, subject to the interest of the bank. In other words, if and when the debt due the bank was fully paid, the designation of the beneficiaries should be restored.

On the written consent of Gertrude Skelly, the original primary beneficiary, the bank applied the whole proceeds of this policy together with parts of the proceeds of three other policies in payment of the indebtedness secured. The selection of the policies which were so applied was made by the bank and this executrix had nothing to do with which policies the bank selected.

The estate appears to have been the beneficiary in policies in the approximate sum of $50,000.00 to $60,000.00 and some of the remaining policies named as beneficiaries Mrs. Burford, the appellant, and Mrs. Stuart, the appellee. The witness, Stuart, testified as follows:

"But I just have seen from the annual report that the returns from the insurance policies were paid or at least were shown as being paid into the estate. And they were approved by the Internal Revenue."

It is not clear whether Mr. Stuart referred to the returns from all policies including those payable to appellant and to appellee or whether his testimony was limited to the proceeds of policies payable to the estate.

Mr. Stuart further testified that a full disclosure of the insurance transaction was made to the attorney who was then representing the appellant; that this disclosure was made prior to the hearing on the final account. He testified further that prior to the final account and the decree of distribution an accountant employed by appellant spent more than a year in the estate offices going over all of Mr. Skelly's books and records.

The record does not contain the final account nor the decree of the county court

approving it and directing distribution. In any event, the final account of the Executrix and her supplement to the final account reporting her actions in carrying out the final decree of distribution were approved by the county court. No appeal was lodged from those orders and decrees. The District Court very clearly recognized that plaintiff in error had not appealed from those orders and decrees when it stated, " * * * this is not an appeal from an order allowing final account or petition in distribution, but is an appeal from the order of the county court authorizing the discharge of the executrix."

Title 58 O.S.1961, Sec. 556, provides in part that the settlement of the account and the allowance thereof by the court, or upon appeal, is conclusive against all persons in any way interested in the estate, saving, however, persons laboring under any legal disability. Title 58 O.S.1961, Sec. 631, provides for the distribution of an estate upon the final settlement of the accounts of the executor or administrator. Title 58 O.S.1961, Sec. 632, imposes certain duties upon the county court and prescribes that its order or decree is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal.

In Oberlander v. Eddington, Okl., 391 P.2d 889, we held:

"Decree of distribution of county court having jurisdiction of the settlement of a testator's estate, entered after due notice and hearing, is conclusive in the absence of fraud, mistake or collusion as to the rights of parties interested in the estate, to all portions of said estate thereby ordered; and capable of being, then distributed under the will, unless reversed or modified on appeal; and such decree is not subject to collateral attack."

In the instant action there is no evidence of fraud, mistake or collusion. If the plaintiff in error had a right to an apportionment of the proceeds arising from the fact that she was a contingent beneficiary of the insurance policy, that is, if and when the debt to the bank was fully paid, such right should have been asserted by objecting to the final account and if her objection was denied, she should have appealed from the order approving the final account and the decree of distribution. As stated by the trial court, plaintiff in error did not perfect an appeal from the order allowing the final account but appealed only from the subsequent order authorizing the discharge of the executor.

We can only conclude that since no appeal was perfected from the order approving the final account of the executor and decreeing distribution of the estate the same are conclusive as to the rights of the parties.

Plaintiff in error in her third specification of error, argues that the objections to the final discharge of the surviving executrix are not concluded by the settlement of the final account and second supplement to the final account as against her.

A determination of this specification of error is not material to the issues involved. We are concerned here as to the correctness of the order of discharge.

We have heretofore determined that the trial court did not commit reversible error in failing to direct the surviving executrix to bring an action to recover the purported interest of the deceased in the real estate; and we have determined that the order approving the final account is conclusive as against the rights of plaintiff in error. In other words, the executrix has fulfilled her duties as executrix. Under the provisions of Title 58 O.S.1961, Secs. 595 and 691, the executrix is entitled to be discharged.

The judgment is accordingly affirmed.

The Court acknowledges the services of Albert W. Trice, who with the aid and counsel of H. G. Orton and Duard C. Willoughby, Special Masters, prepared a preliminary advisory opinion. These attorneys had been recommended by the Oklahoma Bar Association and appointed by the

Court. The Chief Justice then assigned the case to Justice Pat Irwin, for review and study, after which and upon consideration by the Court, the foregoing opinion was adopted.

JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, IRWIN, BERRY, HODGES and LAVENDER, JJ., concur.