David R. CHANDLER, Appellant,

v.

Mary Frances DENTON, Richard L. Denton, Edith P. Denton, Appellees.

Nos. 62575, 62995.

Supreme Court of Oklahoma.

Nov. 3, 1987.

As Corrected Nov. 5, 1987.

Rehearing Denied Jan. 12, 1988.

Linda G. Alexander, Niemeyer, Edmands, Noland, Alexander & Hargrave, Oklahoma City, for appellant.

Paul E. Northcutt, Northcutt, Raley, Clark & Gardner, Ponca City, for appellees.

DOOLIN, Chief Justice.

Raymond Wallace Denton died testate on January 28, 1976, leaving three heirs at law: his surviving spouse, Mary, his son, Richard, and his daughter, Mary Raye. Both of Raymond's children had reached majority by the time Raymond died. Raymond's will was admitted to probate, under the terms of which his surviving spouse, Mary, was the sole beneficiary. Seventeen months after Raymond's death, Mary disclaimed her interest in two tracts of land, one in favor of her daughter, the other in favor of her son, subject to a life estate retained by Mary in these two properties. It is this disclaimer in favor of Richard that is the subject of this consolidated appeal. On August 31, 1977, the probate court issued its Decree of Settlement of Final Account, Determination of Heirship and Distribution of Estate (Decree of Distribution), in which the court awarded all of Raymond's property to Mary, except for the two tracts Mary disclaimed. These two properties were distributed in accordance with the disclaimer to Richard and Mary Raye, subject to Mary's life estate.[1] The

---

1. The Decree of Distribution reads:

¶ 9: The Court further finds that Mary Frances Denton is entitled to distribution of all the assets of the Raymond Wallace Denton Estate under the terms of his Last Will and Testament admitted herein. The Court further finds, however, that Mary Frances has filed herein her Disclaimer of her interest of part of the real estate in this estate. That by Disclaimer dated August 24, 1977, said Mary Frances Denton disclaimed her interest in, and to the surface only, to the S/2 of the SE/4 of Section 31, Township 27 North, Range 1 East, Kay County, Oklahoma, subject, however, to Mary Frances Denton re-

serving the use, benefit and income to said real estate during the remainder of her lifetime and after her death to her son, Richard Lee Denton, his heirs and assigns forever....

¶ 10: It is therefore Ordered Adjudged and Decreed that said deceased died testate, and that all of the property of said estate except that disclaimed by Mary Frances Denton, as hereinabove set out, is hereby distributed as provided by the Last Will and Testament of Raymond Wallace Denton, deceased, to Mary Frances Denton and that the surface only to the S/2 of the SE/4 of Section 31, Township 27 North, Range 1 East, Kay County, Oklahoma is distrib-

Decree of Distribution was not appealed and became final.

In her capacity as administratrix of Raymond's estate, Mary brought an action for an accounting on April 6, 1976, against David R. Chandler (Chandler), who had been Raymond's business partner. Chandler counterclaimed for assault, battery, extortion and trespass against Mary, Richard, and Richard's wife, Edith. Chandler later filed a separate lawsuit against these three parties for assault, battery, trespass, extortion, damage to property and intentional infliction of emotional distress. Mary was dismissed with prejudice as a party defendant and the jury awarded Chandler damages in the amount of $1,100,030.00 on September 23, 1982.[2] The next day, Richard quit claimed back to Mary the 80 acres distributed to him by the probate court as a result of Mary's disclaimer.

Chandler brought an action against Mary, Richard and Edith on the grounds that the transfer of the 80 acres was made contrary to the Oklahoma Uniform Fraudulent Conveyance Act, 24 O.S.1971, §§ 5, 10, 101.[3] Mary answered that Richard had declined to accept the disclaimer made in August of 1977 and that when Richard first became aware on September 1, 1982 that Mary had disclaimed without his knowledge or consent, he quit-claimed the property back to her. Chandler then sought to amend his petition to include punitive damages on the grounds that the conveyance was a crime under 21 O.S.1981, § 1671. Mary filed an amended answer and asserted for the first time that the disclaimer was void and of no effect because it was not timely filed, as a result of which Richard never owned any interest in the property and the quit-claim was not a violation of the Oklahoma Uniform Fraudulent Conveyance Act. Mary then filed a Motion for Judgment on the Pleadings.

The trial court found the disclaimer filed by Mary seventeen months after Raymond's death void because it was not filed within six months of Raymond's death as required by 84 O.S.1981, § 24,[4] and that the disposition of the property was in violation of 84 O.S.1981, § 26. Because the disclaimer was untimely filed, the Decree of Distribution was void on its face and subject to collateral attack. The trial court then ruled that because Richard had never taken title to the 80 acres in question, he could not be guilty of fraudulent conveyance and sustained the Motion for Judgment on the Pleadings. From this decision Chandler timely appealed.

On the same day that the trial court in the fraudulent conveyance case handed down its ruling, Mary returned to the probate court and filed an application for an Order Nunc Pro Tunc asserting the disclaimer was void because it was not timely filed. Chandler opposed this application. The probate court issued an Order Nunc Pro Tunc modifying its previous Decree of Distribution and awarded all of Raymond's property to Mary on the grounds that the disclaimer was not timely filed and was therefore void. From this Order Nunc Pro Tunc Chandler timely appealed. By request of all the parties, these two appeals have been consolidated into one.

The consolidated appeals were sent to the Court of Appeals, Oklahoma City Division, which, in an unpublished opinion, affirmed the probate court order nunc pro tunc and the trial court's judgment on the pleadings. We granted certiorari to review that opinion.

The dispositive question on appeal is whether the Decree of Distribution, which was not appealed and became final, is shielded from collateral attack because the probate court made a mere error of law, or whether the Decree was void on its face because the disclaimer was untimely filed,

---

uted to Richard Lee Denton, subject to the life use of Mary Frances Denton as set out above....

2. *See, Chandler v. Denton,* appeal No. 59,516, 741 P.2d 855, (Okl.1987) handed down May 12, 1987. (Rehearing denied, Sept. 16, 1987).

3. Since repealed. Now 24 O.S.Supp.1986, §§ 116, 119, 113.

4. Since amended to require filing within nine months.

thereby rendering the decree susceptible to both direct and collateral attack. We answer the first half of the question affirmatively and the second half negatively.

█ Before addressing the merits of this appeal, we make one observation. The purpose of an order nunc pro tunc is to allow a court to change its previous ruling to correct clerical or scrivener's errors so that the judgment or final decree reflects what was actually decided and to make the judgment or decree speak the truth. We have repeatedly held that a claim that there are errors of law in a judgment or decree cannot be raised by application for an order nunc pro tunc. The power to make corrections by order nunc pro tunc extends only to clerical errors, not to judicial errors. An order nunc pro tunc may not be used to render another and different judgment.[5] Because the probate court changed the Decree of Distribution to reflect a different judgment by use of an order nunc pro tunc, such order is outside the office of an order nunc pro tunc and is vacated.

Central to the decisions of the probate court, the trial court and the opinion of the Court of Appeals that the disclaimer was void because untimely filed, is their reading of our opinion, *In the Matter of the Estate of Griffin,* 599 P.2d 402 (Okl.1979). In *Griffin* we found that a precondition to an effective disclaimer is timely filing in accordance with 84 O.S.1981, § 24, and that the six-month, now nine-month, period for filing begins to run from the date of the spouse's death. If the disclaimer is filed after expiration of the statutory period, it is not effective. The appellant in *Griffin*

sought to withdraw his disclaimer before the Decree of Distribution was rendered, a hearing was held in which the trial court refused to permit withdrawal of the disclaimer, and the Decree of Distribution was timely appealed. In that appeal the error of law was directly attacked before the Decree became final. Here, on the other hand, the Decree of Distribution was not appealed and became final. Mary Denton collaterally attacks the disclaimer some six and one-half years after the Decree became final. When collateral, or delayed, attacks are made on a final judgment or decree, we apply different principles from those applied in *Griffin.*

█ The judicial acts of a county, now district, court sitting in its capacity as a probate court are protected from collateral attack in the same manner and with the same force as other judgments.[6] A collateral attack on a judicial decision is an attempt to avoid, defeat, or evade it, or to deny its force and effect in some manner not provided by law; that is, in some other way than by appeal, writ of error, certiorari, or motion for a new trial or timely proceedings to vacate, reopen or modify.[7] A Decree of Distribution, as any other final judgment, is conclusive in the absence of fraud, mistake or collusion as to the rights of the parties interested in the estate. Such a conclusive judgment is final as to all portions of the estate distributed under the will, unless reversed or modified on appeal, and the decree is not subject to collateral attack.[8] "A judgment of a court of competent jurisdiction may not be impeached collaterally for mere errors or irregularities

5. *Application of Okla. Natural Gas Co.,* 715 P.2d 477 (Okl.1985); *Pettit v. Arkansas Louisiana Gas Co.,* 595 P.2d 793 (Okl.1979); *Hawkins v. Hurst,* 467 P.2d 159 (Okl.1970); *Jones v. Jones,* 442 P.2d 319 (Okl.1968); *Fowler v. Zimmerman,* 383 P.2d 682 (Okl.1963); *Vitale v. Dunnett,* 365 P.2d 122 (Okl.1961); *Humphrey Oil Co. v. Lindsey,* 370 P.2d 296 (Okl.1961); *Oklahoma Turnpike Authority v. Kitchen,* 337 P.2d 1081 (Okl.1959); *Stevens Expert Cleaners & Dyers v. Stevens,* 267 P.2d 998 (Okl.1954); *In re Peter's Estate,* 175 Okl. 90, 51 P.2d 272 (1935).

6. *State of Okla. ex rel. American Flyers Airplane Corp. v. Superior Court of Creek County, Bristow Division,* 435 P.2d 131, 133 (Okl.1967); *Hether-*

ington v. Falk,* 173 Okl. 437, 49 P.2d 756, 759 (1935). *In re Everhart's Estate,* 208 Okl. 101, 253 P.2d 174, 179 (1953).

7. *State v. Corporation Commission,* 590 P.2d 674, 677 (Okl.1979), quoting from *Watkins v. Jester,* 103 Okl. 201, 229 P. 1085 (1924).

8. *Burford v. Stuart,* 412 P.2d 169, 174 (Okl. 1966); *Oberlander v. Eddington,* 391 P.2d 889, 893 (Okl.1964); *Matthewson v. Hilton,* 321 P.2d 396, 398 (Okl.1958); *In re Everhart's Estate,* 208 Okl. 101, 253 P.2d 174, 178 (1953); *Hetherington v. Falk, supra,* note 6; *National Exploration Co. v. Robins,* 140 Okl. 260, 283 P. 236, 238 (1929).

committed by the court in the exercise of its jurisdiction or in the course of the proceedings, even though the error is one of law and even though the error or irregularity appears on the face of the record." [9] "[T]he power to decide includes the power to decide wrong, and an erroneous decision is as binding as one that is correct, until set aside or corrected in a manner provided by law." [10]

■ Neither Mary nor Richard assert that the Decree of Distribution resulted from fraud or collusion. Their sole claim is the disclaimer was ineffective because it was not timely filed within the statutory period. We find that acceptance of the untimely filed disclaimer by the probate court was, at most, an error of law and, as such, the Decree of Distribution is shielded from collateral attack. Mary and Richard cannot allow the Decree of Distribution to become final and then, six and one-half years later, successfully attack the Decree in a collateral proceeding when the error could have been corrected on appeal.

The lower courts found that the Decree of Distribution was void on its face and therefore subject to collateral attack. A final judgment or decree is void on its face if from examination of the judgment roll [11] it may be determined that one of the three elements of jurisdiction is absent: in personam jurisdiction, subject-matter jurisdiction, or jurisdictional power to pronounce the particular judgment rendered.[12] The parties do not cast doubt on the probate court's jurisdiction over the three heirs at law of Raymond Denton, nor do they cast doubt on the probate court's jurisdiction to interpret Raymond's will or to distribute Raymond's property. It is the third leg of jurisdiction that is challenged here on the grounds that the probate court did not have jurisdiction to accept an ineffective disclaimer, thereby rendering the Decree of Distribution void on its face.

This Court was faced with a similar situation in *Abraham v. Homer*, 102 Okl. 12, 226 P. 45, 47–48 (1924). We quote at length from that opinion:

Jurisdiction over the person, jurisdiction over the subject-matter, and jurisdiction to render the particular judgment are three separate elements of the jurisdiction of a court. Each element of jurisdiction is dependent upon both law and fact. Facts showing the service of process in time, form, and manner sufficient to satisfy the requirements of mandatory statutes in that regard are essential to jurisdiction over the person. Facts showing that the matter involved in a suit constitutes a subject-matter consigned by law to the jurisdiction of that court are essential to jurisdiction over the subject-matter of the suit. Facts showing that a particular judgment is rendered in compliance with all existing mandatory law in that regard are essential to jurisdiction to render a particular judgment. All such facts are known as jurisdictional facts.

. . . .

All such facts not constituting proof of the existence of the subject-matter, nor of the cause of action, *but conditions precedent to the right of the court to proceed after it has acquired jurisdiction over the subject-matter and of the person, are known as quasi jurisdictional facts*. Their existence the court does not merely assume but adjudicates for its jurisdiction to so do is created by law and the jurisdictional facts. It is usually of no great importance to distinguish whether a given fact is a quasi

---

9. *Lee v. Harvey*, 195 Okl. 178, 156 P.2d 134 (1945); *See also, Presbyterian Hospital v. Board of Tax Roll Corr.*, 693 P.2d 611, 615 (Okl.1984).

10. *Woodrow v. Ewing*, 263 P.2d 167, 171 (Okl. 1953); *See also, Lee v. Harvey, supra* note 9; *Mayhue v. Mayhue*, 706 P.2d 890, 893 n. 7 (Okl. 1985).

11. The judgment roll consists of the petition, exhibits, process, pleadings, reports, verdicts, orders and judgment, and all material acts and proceedings of the court. *Sabin v. Levorsen*, 193 Okl. 320, 145 P.2d 402, 405 (1943).

12. *Mayhue v. Mayhue*, supra note 10 at 893, n. 8; *State of Oklahoma v. Corporation Commission*, supra note 7 at 677; *Westbrook v. Dierks*, 292 P.2d 172, 175 (Okl.1955); *Scoufos v. Fuller*, 280 P.2d 720, 723 (Okl.1955).

jurisdictional fact or a fact constituting a part of a cause of action, and its adjudication in neither regard is subject to collateral attack, even when the error of the adjudication is apparent upon the face of the record. On the making of a proper distinction between quasi jurisdictional facts and jurisdictional facts often rests the determination of the validity of a judgment. (emphasis added).

. . . .

In probate matters, where the law provides that the estate of a decedent shall be sold where the personal property is insufficient to pay the debts of the deceased, then facts showing such indebtedness are quasi jurisdictional. Where, in probate proceedings, the law requires that the estate shall not be sold if all the heirs are minors, then facts showing that one or more of them had reached the age of majority are quasi jurisdictional. *Generally speaking, quasi jurisdictional facts are those which do not constitute proof of the existence of the subject-matter on the one hand, and do not constitute proof of a cause of action on the other, but are preliminary facts required to exist in order to authorize the court to proceed and to act.* (emphasis added).

On collateral attack against the judgment of a court of record, when fraud is absent, and all necessary jurisdictional facts existed in the court rendering the judgment attacked, the court on such collateral attack has no right to inquire, determine, and adjudge as to the existence in the original action of quasi jurisdictional facts or facts constituting a cause of action, and this is true, even though upon the face of such judgment itself it appears that the court in the original action had erred both in fact and in law as to the existence of such facts and the right of the parties to the relief granted.[13]

The United States Supreme Court has similarly distinguished between jurisdictional and quasi jurisdictional facts:

It is true that, in every proceeding of a judicial nature, there are one or more facts which are strictly jurisdictional, the existence of which is necessary to the validity of the proceedings, and without which the act of the court is a mere nullity: such, for example, as the service of process within the state upon the defendant in a common-law action, the seizure and possession of the res within the bailiwick in a proceeding in rem, a publication in strict accordance with the statute, where the property of an absent defendant is sought to be charged. So, if the court appoint an administrator of the estate of a living person, or, in a case where there is an executor capable of acting, or condemns as lawful prize a vessel that was never captured, or a court-martial proceeds and sentences a person not in the military or naval service, or the land department issues a patent for land which has already been reserved or granted to another person, the act is not voidable merely, but void. In these and similar cases the action of the court or officer fails for want of jurisdiction over the person or subject-matter. The proceeding is a nullity, and its invalidity may be shown in a collateral proceedings.

There is, however, another class of facts which are termed "quasi jurisdictional," which are necessary to be alleged and proved in order to set the machinery of the law in motion, but which, when properly alleged, and established to the satisfaction of the court, cannot be attacked collaterally. With respect to these facts, the finding of the court is as conclusively presumed to be correct as its finding with respect to any other matter in issue between the parties. . . . In this class of cases, if the allegation be properly made, and the jurisdiction be found by the court, such finding is conclusive and binding in every collateral proceeding; and, even if the court be imposed upon by false testimo-

**13.** 226 P. 45, 47–48. *See also, Marshall Oil Corp. v. Adams,* 688 P.2d 37 (Okl.1983); *Gulfstream Petroleum Corp. v. Layden,* 632 P.2d 376 (Okl. 1981) (Doolin dissenting); *State v. Corp. Comm.,* supra note 7.

ny, its finding can only be impeached in a proceeding instituted directly for that purpose.[14]

We found in *Griffin*[15] that compliance with 84 O.S.1981, § 24 is mandatory on the party seeking to disclaim. Timely filing is a pre-condition to an effective disclaimer and noncompliance with the statute may be directly attacked on appeal. The question here is whether the legislature also intended compliance with the statute to be mandatory on a court in the exercise of its probate jurisdiction or merely directory. The statute in question is part of Title 84, Wills and Succession. The legislature did not include it as part of 58 O.S.1981, §§ 1–11, the probate court jurisdictional sections, and therefore did not intend compliance with the statute to be jurisdictional. Nor does the disclaimer statute affect a probate court's jurisdiction in a fundamental sense, that is, in its power to adjudicate the rights of the parties or to distribute the estate.[16] Therefore, the acceptance of a disclaimer by the probate court is a quasi jurisdiction fact and erroneously accepting an untimely filed disclaimer does not render the decree void for lack of jurisdiction. If the probate court accepts an untimely filed disclaimer, such error may be directly attacked on appeal, but once the Decree of Distribution becomes final, such error of law is not subject to collateral attack.

Just as it is important that there be a forum in which to begin litigation, so also is it important there be an end to litigation. Public policy and the interests of litigants and the general public require that there be an end to litigation and that matters once finally determined in a court of competent jurisdiction be not relitigated in an interminable succession of other actions.[17]

A finding that a statutory restriction is jurisdictional, and that failure to comply with that statute renders a judgment or Decree of Distribution void, not only affects the rights of the litigants but also the rights of similarly situated litigants in future cases as well as the rights of bona fide purchasers for value of property distributed by a probate court. Because of the drastic consequences of finding a statute to be jurisdictional and the concomitant possibility of placing a cloud over land titles, we are hesitant to do so unless the statute goes to jurisdiction in a fundamental sense. Jurisdictional errors should be defined as actions taken by a probate court which transcend its authority or power not mere errors in following or applying the law.[18]

The opinion of the court of appeals is VACATED, the order nunc pro tunc of the probate court is VACATED, and the judgment on the pleadings of the trial court is REVERSED, with instructions that the cause of action for violation of the Oklahoma Uniform Fraudulent Conveyance Act is REMANDED for trial on the merits.

HODGES, LAVENDER, OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

SIMMS, J., concurs in judgment.

HARGRAVE, V.C.J., disqualified.

**14.** *Noble v. Union River Logging R. Co.,* 147 U.S. 165, 173–174, 13 S.Ct. 271, 273–74, 37 L.Ed. 123 (1893), *See also, Stoll v. Gottlieb,* 305 U.S. 165, 176–77, 59 S.Ct. 134, 139–40, 83 L.Ed. 104 (1938).

**15.** 599 P.2d at 406.

**16.** *See, Barquis v. Merchants Collection Assoc. of Oakland,* 7 Cal.3d 94, 101 Cal.Rptr. 745, 496 P.2d 817, 835–38 (1972). *See also,* Boskey & Braucher, *Jurisdiction and Collateral Attack,* 50 Colum.L.Rev. 1006 (1940).

**17.** *Woodrow v. Ewing, supra,* note 10 at 172.

**18.** Morgan, *Delayed Attacks on Final Judgments,* 33 Okl.L.Rev. 45, 57–58, 72 (1980).