2003 OK 49

John R. BOOTH and Thomas Frank Booth, Plaintiffs/Appellees,

v.

Bobbie Jean McKNIGHT, Defendant/Appellant.

No. 95,339.

Supreme Court of Oklahoma.

May 13, 2003.

Was the Lincoln County District Court correct in concluding that the Craig County court's probate decree is facially void insofar as it distributes the mother's mineral interest? and [2] Did the former court err in quieting the brothers' title to the mineral interest? We answer both questions in the affirmative.

## I

### THE ANATOMY OF LITIGATION

¶ 2 Lois Gene Booth (Mother) died testate in Craig County in 1996, survived by three children: John R. and Thomas Frank Booth, plaintiffs below (Brothers), and Bobbie Jean McKnight, defendant below (Sister). The Craig County District Court appointed Sister the personal representative of her mother's estate. Sister's final account shows the estate's residual assets to consist of $2,316.03 in Sister's lawyer's trust account and a small mineral interest (valued at $400) in a tract of land located in Lincoln County.[2]

¶ 3 The *final account's terms* explicitly state that *with the exception of personal representative's and attorney's fees*, all claims against the estate have been paid in full.[3] The final account's filing triggered the scheduling of a hearing, the purpose of which was to consider objections to that document.[4] Sister's lawyer published notice of the hearing in a local newspaper and mailed individual notices to all of the decedent's named heirs, devisees, legatees, and creditors.[5] The

Karl D. Jones, Jones & Gardner, Vinita, OK, for Appellant.

Dan A. Erwin, Chandler, OK, for Appellees.[1]

OPALA, V.C.J.

¶ 1 The *certiorari* petition presents two dispositive issues for this court's resolution:

1. Identified herein are only those counsel for the parties whose names appear on the *certiorari* briefs in this court.

2. Final Account, Petition for Determination of Heirs, Distribution and Discharge, Plaintiff's Exhibit No. 3, *Booth v. McKnight*, Case No. CJ–99–203 (Dist. Ct. Lincoln County Sept. 7, 2000).

3. The terms of the final account's first paragraph are:

 Petitioner [Sister as executrix] respectfully shows to the Court that due and lawful notice to creditors of the above named deceased has been given, for the time and in the manner provided by law, and *with the exception of the fees and expenses of the Personal Representative and attorneys*, all claims of every kind and character, chargeable to said estate have been

fully paid, satisfied and discharged, including costs of administration and all other expenses. Final Account, *supra* note 2, ¶ 1 (emphasis added).

4. The terms of 58 O.S.2001 §§ 553, 554 call for a hearing at which interested persons may file exceptions to the final account.

5. The pertinent terms of 58 O.S.2001 § 553 provide that in addition to individually-mailed notice to all heirs, legatees, and devisees whose addresses are known,

 notice of such hearing shall also be given by publication once each week for two (2) consecutive weeks in a newspaper published in the county, showing the name of the decedent and of the executor or administrator, the date of the hearing, and that such account is for final settlement and distribution.

record contains an affidavit of mailing that indicates notice of the critical hearing was sent to each of the two brothers.[6]

¶ 4 The mailed notice consists of a single-page document, the text of which states that a final account has been filed and a hearing on that instrument is scheduled for a certain date, time, and place. The notice urges all interested persons to appear at the hearing and show cause (if any they have) why the estate should not be settled according to the final account's terms. *Conspicuously absent from the Craig County probate record is any indication that Brothers were mailed a copy of the final account that was to be the subject of the final distribution hearing and the very reason it was to be held.*

¶ 5 Neither of the brothers appeared at the final hearing. In settling the estate and distributing its assets the Craig County court ordered that all of the decedent's listed property be divided among the named heirs in equal one-third shares *after payment of attorney's and personal representative's fees as well as the costs of administration.*[7] *The court decreed that the mineral estate be awarded to the Sister as her personal representative's fee.*[8] It granted Sister's lawyer as his probate fee the amount he held in the trust account.[9] Following payment to the personal representative and her lawyer, the probate assets stood exhausted. The court closed the estate. *The brothers—who never received a copy of the final distribution decree—did not press for corrective relief from that ruling in the Craig County court.*[10]

¶ 6 Sometime after the estate's closing, the mineral interest began producing substantial revenue.[11] When the brothers learned that the Craig County probate court had awarded the mineral interest to Sister *in toto*, they brought suit against her in Lincoln County (the *situs* of the land) to quiet their title.[12]

¶ 7 The brothers alleged their mother's will directs the mineral interest's division among the siblings in equal one-third shares. *Although Sister's final account prayed for such a distribution, the court's decree awarded the interest entirely to her.* The brothers (a) *asserted* that Sister's failure to give them adequate notice deprived them of property without due process and (b) *complained* the notice given them by the Craig County court was insufficient because Sister failed to let them know of the precise disposition she would seek there. Even had they read all the documents on file they would not

6. Affidavit of Mailing, Defendant's Exhibit No. 2, *Booth v. McKnight*, Case No. CJ–99–203 (Dist. Ct. Lincoln County Sept. 7, 2000). Although there was contention below as to whether the brothers received the mailed notice, the trial court made no finding on this disputed issue. When a letter is placed in the mail system bearing a correct address and sufficient postage to reach its destination, a rebuttable presumption arises that the letter did in fact reach the addressee. *In the absence of sufficient rebuttal evidence, the presumption prevails. Shamblin v. Beasley*, 1998 OK 88, ¶ 23 n. 51, 967 P.2d 1200, 1212 n. 51; *Nat'l Aid Life Ins. Co. v. Parker*, 1942 OK 213, ¶ 5, 127 P.2d 168, 169. We hence do not view the absence of a finding to be fatal to our consideration of the case.

7. Order Allowing Final Accounting, Decree Determining Heirs, Decree of Distribution and Discharge, Plaintiff's Exhibit No. 6, *Booth v. McKnight*, Case No. CJ–99–203 (Dist. Ct. Lincoln County Sept. 7, 2000).

8. *Id.*

9. *Id.* Payment of an executor's fee and that of the executor's lawyer are prescribed by the terms of 58 O.S.2001 § 525, which state that the personal representative "shall be allowed all necessary expenses in the care, management and settlement of the estate and for his services such fees as are provided in this chapter."

10. When a final distribution decree is entered upon a party's default, the terms of 58 O.S.2001 § 722 bar the defaulting party's appellate relief. A person in that position may move the probate court to vacate the judgment within thirty days of its entry. 58 O.S.2001 § 723.

11. Testimony heard during the Lincoln County proceedings indicates that as of the date of the hearing the $400 mineral interest produced approximately $40,000 in revenue. Transcript of Proceedings, *Booth v. McKnight*, Case No. CJ–99–203 (Dist. Ct. Lincoln County Sept. 7, 2000), at 39.

12. The terms of 12 O.S.1991 § 131 require that "[a]ctions for the following causes must be brought in the county in which the subject of the action is situated . . . 4th, To quiet title, to establish a trust in, remove a cloud on, set aside a conveyance of . . . real property."

have been adequately apprised of the relief she would press for at the final hearing.[13]

¶ 8 The Lincoln County District Court ruled that the Craig County notice was fatally deficient by failing to satisfy the minimum standards of due process. *Instead of making it clear that a different disposition would be sought, the final account on file below (and included in the record for this appeal) confirms the asset distribution to be effected will be in conformity to the will's provisions.*[14] The very fact that a distribution other than that sought by the pleadings actually took place fatally taints the notice Sister provided.[15] *The Lincoln County court also ordered the mineral interest title quieted in each of the two brothers in one-third shares, leaving to Sister the remaining one-third.*[16]

¶ 9 The Court of Civil Appeals (COCA) affirmed the Lincoln County court's decree, *holding that neither the final account itself nor the notice of the hearing to be conducted informed the brothers that on their default they stood to lose the mineral interest devised to them by the mother's will.* Lack of adequate notice deprived the brothers of the opportunity to appear and challenge the relief about to be sought. COCA analogized the result of the flawed final distribution hearing *to a default judgment granting relief different in kind or amount from that sought by the pleadings* and noted that such a judgment violates due process. In COCA's view (a) the Craig County probate decree's critical terms vary substantially from the plea for relief in Sister's requested distribution without affording advance notice to the brothers and (b) the variance is fatal because it facially offends due process. We granted *certiorari.*

## II

### THE LITIGATION'S PROCEDURAL POSTURE

#### A.

##### *Collateral Attack*

¶ 10 The brothers' quiet-title litigation *collaterally attacked* the Craig County probate decree. Facially valid adjudications of a district court sitting in probate stand immune from collateral attack to the same extent as any other judgment.[17] A court's power to decide a case includes the power to decide wrongly.[18] When a court exercises judicial power over a subject, its judgment must stand undisturbed unless challenged by a timely appeal.[19]

¶ 11 A valid probate decree is one which—on the face of the judgment roll—shows the presence of three required elements of jurisdiction: those of the person and subject matter as well as of the power to render the entered decree.[20] When an examination of the record proper's face [21] reveals a want of one or more of these requirements, the decree is facially void and subject to

13. Response [to Defendant's Supplemental Brief After Trial and Resume of Evidence], Record at 157.

14. Order, Record at 160.

15. *Id.* at 161.

16. *Id.*

17. *Stork v. Stork,* 1995 OK 61, ¶ 10, 898 P.2d 732, 737; *Chandler v. Denton,* 1987 OK 109, ¶ 10, 747 P.2d 938, 941.

18. *Stork, supra* note 17, ¶ 13, at 739; *Chandler, supra* note 17, ¶ 10, at 942.

19. *Halliburton Oil Producing Co. v. Grothaus,* 1998 OK 110, ¶ 10 n. 11, 981 P.2d 1244, 1249 n. 11; *Stork, supra* note 17, ¶ 10, at 737; *Sabin v. Levorsen,* 1943 OK 77, ¶ 6, 145 P.2d 402, 405.

20. *Halliburton, supra* note 19, ¶ 10, at 1249; *Messenger v. Messenger,* 1992 OK 27, ¶ 11 n. 21, 827 P.2d 865, 870 n. 21; *Mayhue v. Mayhue,* 1985 OK 68, ¶ 5 n. 8, 706 P.2d 890, 893 n. 8; *Gulfstream Petroleum Corp. v. Layden,* 1981 OK 56, ¶ 7, 632 P.2d 376, 378; *Scoufos v. Fuller,* 1954 OK 363, ¶ 20, 280 P.2d 720, 723; *Sabin, supra* note 19, ¶¶ 7–8, at 405.

21. The term "judgment roll" is generally synonymous with "common-law record" or "record proper." *Rodgers v. Higgins,* 1993 OK 45, ¶ 11 n. 31, 871 P.2d 398, 405 n. 31. It includes "the petition, the process, return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material acts and proceedings of the court." 12 O.S.2001 § 32.1.

collateral attack by any interested party at any time and wherever venue may be laid.[22] Passage of time will neither vitalize a facially flawed decree (or judgment) nor immunize its plainly fatal deficiency from collateral attack.[23]

## B.

### Standard of Review

■ ¶ 12 The Lincoln County court's ruling amounts to a declaration that, for want of adequate notice, the Craig County final distribution decree is facially void *pro tanto*—to the extent that it distributes the mineral interest entirely to Sister. It is that legal conclusion which stands here today for *de novo* review.[24] When reexamining a trial court's legal rulings, an appellate court exercises plenary, independent, and non-deferential authority.[25]

## C.

### Sufficiency of the Record for this Appeal

¶ 13 This court is called upon to review today *one* district court's nullity sentence

pronounced upon *another* district court's adjudication, rested upon the latter decision's facially-apparent partial invalidity. This task can be accomplished only by examining the entire judgment roll.[26] The Lincoln County record for the appeal we now review has been assembled and certified,[27] but the Craig County probate's judgment roll is in disarray. It consists only of certified copies of critical documents the parties deemed indispensable for the determination of the probate decree's facial validity and of other issues raised below.[28] A collateral attack—such as that brought in Lincoln County—is not designed to afford corrective relief by appeal. Its issues stand confined to *a review of the assailed judgment's four corners for facial validity* a process that ordinarily can be accomplished only by resort to a complete judgment roll.

■ ¶ 14 No issue will be resolved upon

---

**22.** The relevant terms of 12 O.S.2001 § 1038 state: "A void judgment, decree or order may be vacated at any time, on motion of a party, or any person affected thereby." *See also Halliburton, supra* note 19, ¶ 10 n. 11, at 1249 n. 11; *Norman v. Trison Dev. Corp.*, 1992 OK 67, ¶ 10, 832 P.2d 6, 10 ("[a] facially void judgment may be attacked at any time; it may be vacated in the very same case in which it was entered or in some collateral proceeding"); *Scoufos, supra* note 20, ¶ 16, at 723.

**23.** *Read v. Read*, 2001 OK 87, ¶ 14, 57 P.3d 561, 565; *Halliburton, supra* note 19, ¶ 10 n. 11, at 1249 n. 11; *Hough v. Hough*, 1989 OK 65, ¶ 4, 772 P.2d 920, 921; *Scoufos, supra* note 20, ¶ 16, at 723.

**24.** This court is not called upon to review here the Craig County probate distribution. Rather, the case that stands before us for *certiorari* scrutiny is an appeal from the Lincoln County tribunal's quiet-title adjudication. The more deferential review standard that would generally govern on appeal from a probate decree does not apply here. *See In re Estate of Maheras*, 1995 OK 40, ¶ 7, 897 P.2d 268, 271–72 (probate decrees or orders are of equitable cognizance and may not be disturbed unless found to be clearly contrary to the weight of evidence or to some governing principle of law); *In re Estate of Eversole*, 1994 OK 114, ¶ 7, 885 P.2d 657, 661 (while an appellate court will examine the record proof, it presumes the trial court's probate decision is correct

unless it is found to be clearly contrary to the weight of evidence or to some governing principle of chancery practice).

**25.** *Kluver v. Weatherford Hosp. Auth.*, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083 ("[i]ssues of law are reviewable by a *de novo* standard and an appellate court claims for itself plenary, independent, and non-deferential authority to reexamine a trial court's legal rulings"); *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

**26.** *Halliburton, supra* note 19, ¶ 11, at 1249 (an examination of a judicial act's facial validity *demands that the entire judgment roll be included in the record for appeal*); *Fent v. Okla. Natural Gas Co.*, 1994 OK 108, ¶ 11, 898 P.2d 126, 132 (our determination of a *nisi prius* judgment's meaning and effect must be made solely by resort to the face of the judgment roll's four corners).

**27.** *See* 12 O.S.2001 § 990A; OKLA. SUP CT. R. 1.28, 1.33, 12 O.S.2001, Ch. 15, App. 1.

**28.** The brothers also sought an accounting of mineral revenues Sister received after the estate's closing. Petition, Record at 4. The Lincoln County court *correctly abstained from resolving that issue.* No one here objects to its inaction. Sister's accounting must now await further proceedings to be conducted in the Craig County probate.

a critically deficient record.[29] Our examination of the Craig County record is of necessity confined to instruments from that county's probate proceeding which stand included in the record for appeal and which qualify for incorporation into the judgment roll.[30] While generally this court will not notice any instrument that is not a part of the appellate record,[31] uncontroverted facts *dehors* that record which stand admitted in the parties' briefs may be considered to supplement the deficiently-assembled or incomplete judgment roll.[32]

¶ 15 Neither party voiced here an objection to the Lincoln County court's determination of the probate decree's facial invalidity upon an incomplete judgment roll nor asserted that any missing documents, if there presented for inspection, would reveal anything contrary to the Lincoln County court's view of the probate judgment roll's condition. Nor was an objection ever raised on that ground before this court. We hence conclude the Craig County probate's judgment roll (aided by the parties' admissions in the briefs) is complete enough to warrant our pronouncement that the probate decree in contest is indeed facially void *pro tanto*.

## III

### THE CRAIG COUNTY PROBATE DECREE IS FACIALLY VOID *PRO TANTO* BECAUSE THE BROTHERS WERE ENTITLED TO NOTICE THAT WOULD APPRISE THEM OF THE NATURE OF THE ISSUES TO BE CONSIDERED AND THE CONSEQUENCES TO FOLLOW FROM THEIR DEFAULT

¶ 16 At early common law, land (and interests in it) devolved directly from ancestor to heir *sans* judicial intervention, with the title passing by descent to the heir immediately upon the ancestor's death.[33] This state's law unequivocally requires that the district court, *qua* probate tribunal, have cognizance over all the decedent's assets, both in real and personal property.[34]

¶ 17 A final account is in the nature of a request for distribution of any remaining estate assets, for discharge of the personal representative, and for the estate's closing.[35] After a hearing at which interested parties may object to the personal representative's conduct in administering the estate and to the proposed distribution,[36] the probate court directs distribution of each remaining asset,[37] payment of statutorily required fees,[38] and closing of the proceeding. Upon expiration of the thirty-day appeal period, the decree's terms become enforceable.[39]

**29.** *Eckel v. Adair*, 1984 OK 86, ¶ 7, 698 P.2d 921, 924.

**30.** *Fent, supra* note 26, ¶ 11 n. 10, at 132 n. 10.

**31.** *Salazar v. City of Oklahoma City*, 1999 OK 20, ¶¶ 11–12, 976 P.2d 1056, 1061–62; *Reeves v. Agee*, 1989 OK 25, ¶ 14 n. 16, 769 P.2d 745, 752 n. 16; *Eckel, supra* note 29, ¶ 9, at 925.

**32.** *First Federal Savings & Loan Assn. v. Nath*, 1992 OK 129, ¶ 10 n. 32, 839 P.2d 1336, 1342 n. 32; *Chamberlin v. Chamberlin*, 1986 OK 30, ¶ 4 n. 6, 720 P.2d 721, 724 n. 6.

**33.** For a general discussion of early common law and its practice, *see generally* Thomas E. Atkinson, Handbook of the Law of Wills 13–17 (2d ed.1953); Charles Petersdorff, A Practical and Elementary Abridgement of the Cases Argued and Determined in the Courts of King's Bench, Common Pleas, Exchequer, and at Nisi Prius and of the Rules of Court 24 (1832).

**34.** 58 O.S.2001 § 1. *See also* R. Robert Huff, Oklahoma Probate Law and Practice § 1.6 (3d ed.1995).

**35.** 58 O.S.2001 § 634. *See also Hetherington v. Falk*, 1935 OK 750, ¶ 16, 49 P.2d 756, 759 (the "final report and application for distribution" was sufficient as a pleading to invoke the court's jurisdiction to determine the rights of all persons to the estate and to distribute its assets).

**36.** 58 O.S.2001 §§ 553, 554.

**37.** 58 O.S.2001 § 631.

**38.** 58 O.S.2001 § 525.

**39.** The terms of 58 O.S.2001 § 721 provide that an appeal from a final distribution decree may be perfected in the same manner as from other judgments. The terms of 12 O.S.2001 § 990A(A) provide a thirty-day period from the judgment's entry for commencing an appeal.

¶ 18 The terms of the Fourteenth Amendment to the U.S. Constitution and those of Article 2, section 7 of the Oklahoma Constitution forbid the state from depriving any person of life, liberty, or property without due process of law. While the core element of due process is the right to be heard,[40] that element would have no value unless advance notice is afforded of the hearing at a meaningful time and in a meaningful manner.[41] The person to be affected must be fairly and timely apprised of what interests are sought to be reached by the triggered process.[42] Notice and opportunity to be heard must be provided in such a way that a person can intelligently decide in advance whether to appear at the hearing and contest the matters in issue or acquiesce in their *in absentia* resolution and assume the risk from consequences attendant upon a default.[43]

¶ 19 A probate distribution hearing is an adversarial judicial proceeding in which the personal representative and heirs (or beneficiaries) often stand in an adversarial position to one another.[44] A final account is a pleading that (if approved) will have conclusive effect on the litigants' rights.[45] The court's acceptance of the final account and its closing of the estate forever bars all subsequent claims against the estate and the personal representative.[46] Given the close interrelationship between the judicial action here in contest and the extinguishment of the brothers' rights in their mother's estate, the only conclusion to be reached is that the final estate distribution (a) constitutes state action depriving persons of property rights and (b) is subject to full due process protection.[47]

¶ 20 Notice is a *sine qua non* element of personal jurisdiction, without which the court wields no authority over the persons sought to be haled before it.[48] The classic statement of constitutionally adequate notice is that which is reasonably calculated, under the circumstances, to inform interested persons of the pending litigation and to afford them an opportunity to advocate their interest in the cause.[49] Notice that satisfies

**40.** *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950).

**41.** *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965); *Shamblin v. Beasley,* 1998 OK 88, ¶ 12, 967 P.2d 1200, 1209.

**42.** *See supra* note 41.

**43.** *Mullane, supra* note 40.

**44.** *Mullane, supra* note 40, at 316, 70 S.Ct. 652 (an accounting procedure is unique because that species of hearing pits the beneficiary against the trustee as adversary).

**45.** *See supra* note 35 and accompanying text. The terms of 58 O.S.2001 § 556 additionally provide that the "settlement of the account and the allowance thereof by the court ... is conclusive against all persons in any way interested in the estate" save those under a legal disability. The pertinent terms of 58 O.S.2001 § 632 provide that a final probate decree "is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside, or modified on appeal." Because the absent party is barred from appealing, the consequence of property rights' severance is even more dire when a probate decree (as in this case) is entered upon a party's default. *See supra* note 10.

**46.** 58 O.S.2001 § 556. *See also* the provisions of 58 O.S.2001 § 691, which state that upon satisfactory showing that the estate has been fully administered, the court must issue an order (or decree) discharging the personal representative from any subsequent liability.

**47.** *Tulsa Professional Collection Services, Inc. v. Pope,* 485 U.S. 478, 487, 108 S.Ct. 1340, 1346, 99 L.Ed.2d 565 (1988) (the probate court's role in administering a decedent's estate is "so pervasive and substantial that it must be considered state action subject to the restrictions of the Fourteenth Amendment"); *In re Estate of Pope,* 1990 OK 125, ¶ 5, 808 P.2d 640, 643–44.

**48.** *Peralta v. Heights Medical Center, Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 899, 99 L.Ed.2d 75 (1988); *Manzo, supra* note 41, at 550, 85 S.Ct. 1187; *Mullane, supra* note 40; *Pennoyer v. Neff,* 95 U.S. (5 Otto) 714, 732, 24 L.Ed. 565 (1877); *Shamblin, supra* note 41. (due process stands violated by the mere act of exercising judicial power upon process/notice not reasonably calculated to apprise interested parties that legal action is pending and to afford them a meaningful opportunity to be heard); *Heiman v. Atlantic Richfield Co.,* 1991 OK 22, ¶ 7, 807 P.2d 257, 260.

**49.** *Mullane, supra* note 40. In *Mullane* the Court states that the method chosen to impart notice must be that which will actually inform the absentee and be reasonably capable of achieving

due process performs two functions. It not only informs interested persons that litigation is pending (in the sense of telling them that it exists and informing them of time and place where the forensic battle will be waged), but also affords them an opportunity to present a defense against the adversary's claim. *At the bare minimum, a constitutionally adequate notice must apprise one of the antagonist's pressed demands and of the result consequent upon default.*[50]

■ ¶ 21 In order to accomplish that task, notice must provide one with more than the naked logistics of the hearing. For intelligently framing one's defense a person must know what issues one will be confronted with. In deciding whether to appear at the hearing to defend against issues presented for resolution or default and suffer the consequences, one must at every critical stage of the proceedings be provided with (1) notice at a meaningful time and in a meaningful manner, (2) a realistic opportunity to appear and be heard, and (3) the opportunity meaningfully to participate in the proceedings.[51]

¶ 22 The terms of Sister's final account state explicitly that the attorney's and personal representative's fees remain unpaid and that the estate stands ready for final asset distribution subject to those obligations.[52] Had they had the opportunity to receive the final account before it came for hearing, the brothers easily could have determined that not all the estate's expenses had been paid and that satisfaction of unpaid expenses would reduce the few assets that remained. In short, they would have been

able to ascertain what they stood to lose by their absence from the hearing. *The critical defect that condemns the notice contents in the Craig County probate lies in its failure to provide the brothers with that vital information.*[53] Without access to the final account *no person* could have known why the court would not have been able to accept that document and distribute the estate's assets according to its terms. In short, Sister's failure to apprise the brothers of the consequences attendant upon their default rendered the Craig County notice constitutionally deficient and the probate decree entered upon it facially void *pro tanto*— *i.e.,* to the extent of the mineral interest's distribution.

## IV

### THE LINCOLN COUNTY COURT'S DECREE HERE UNDER REVIEW IS FACIALLY VOID *PRO TANTO* INSOFAR AS THAT COURT EXCEEDED ITS LIMITED AUTHORITY OVER THE CRAIG COUNTY PROBATE DECREE—AUTHORITY THAT STOOD LIMITED TO DECLARING THE PROBATE DECREE FACIALLY VOID *PRO TANTO* AND REMOVING THE VOID DECREE'S CLOUD UPON THE MINERAL INTEREST IN QUESTION

■ ¶ 23 A probate decree (or any judgment) entered without proper notice is *ipso facto* facially void.[54] Although a decree so entered may be collaterally attacked in a

---

that goal. *Id.* at 315, 70 S.Ct. at 657–58. If a person may rightfully expect notice of impending judicial action but the method employed for its communication is merely a gesture, there is no notice at all. *Id.*

50. *Shamblin, supra* note 41, ¶ 12 n. 34, at 1209 n. 34.

51. *Pope, supra* note 47, at 489–90, at 108 S.Ct. at 1347; *Manzo, supra* note 41, at 552, 85 S.Ct. at 1191; *Mullane, supra* note 40; *Shamblin, supra* note 41; *Estate of Pope, supra* note 47, ¶ 3, at 642.

52. *See supra* note 3.

53. COCA concluded that the Craig County probate decree was facially void because it was a default judgment that differed in kind or amount

from that sought in the pleadings. COCA is correct that a default judgment awarding relief at variance (in type or quantum) with that sought in the pleadings offends due process for lack of adequate notice to the defaulting party. *La Bellman v. Gleason & Sanders, Inc.,* 1966 OK 183, ¶¶ 11–13, 418 P.2d 949, 953–54; *Davenport v. Jamison,* 1918 OK 754, ¶ 10, 177 P. 550, 551–52. The relevant pleading before the probate court here—the final account—*sought asset distribution in accordance with the will's terms but subject to outstanding personal representative's and attorney's fees. See supra* note 3.

54. *See supra* note 48. *See also In re White's Estate,* 1935 OK 1202, ¶ 13, 52 P.2d 1074, 1075–76.

county outside that of its entry,[55] no district court may extend its very limited cognizance to a review of another court's probate decision *in toto*.[56] The Lincoln County court exceeded its judicial power by usurping the Craig County probate court's exclusive authority over the estate and, if necessary, to reconsider those parts of its decree that might prove inefficacious.[57]

¶ 24 Whenever two courts of concurrent jurisdiction attempt to assert their authority over the same subject matter, the tribunal that first assumes cognizance must be allowed to wield the acquired power to the exclusion of the other.[58] A district court sitting in probate has *unlimited jurisdiction* to determine in whom an estate's property is to be vested and any rights held by other persons in those assets.[59] Upon a probate's commencement, the district court acquires *exclusive cognizance over the estate which remains superior to that of every other tribunal*.[60] Although the probate decree stands tainted *pro tanto* by its partial invalidation, the Craig County court retains its cognizance over the probate assets in the decedent's estate.

¶ 25 Had there been no earlier probate proceeding in another court, a claim to quiet title to a mineral estate in Lincoln County (held by one with a muniment of title) could have been entertained in that forum.[61] But since the estate still stood subject to the Craig County probate jurisdiction, the Lincoln County court could not expand its authority beyond the arena over which it was

---

**55.** *See supra* note 22 and accompanying text. *See also Gulfstream, supra* note 20, ¶ 12, at 379; *Sabin, supra* note 19 (a judgment facially lacking one of the three jurisdictional elements may be collaterally attacked).

**56.** *Chandler, supra* note 17, ¶ 10, at 941–42 ("[t]he power to decide includes the power to decide wrongly, and an erroneous decision is as binding as one that is correct, until set aside or corrected in a manner provided by law"); *Matthewson v. Hilton*, 1958 OK 6, ¶ 3, 321 P.2d 396, 398 (*per curiam*) (the district court's administration of a decedent's estate includes the authority to identify heirs and decide the proportion of assets each may take. The probate tribunal's determination is conclusive upon all heirs regarding their rights under the will or by inheritance except as the distribution decree may subsequently be altered—either on appeal or in another authorized proceeding). Assuming the absence of an appeal, a void judgment may be *vacated* at any time by any court, 12 O.S.2001 § 1038, but a judgment—even when facially invalid—may be *modified* only by the tribunal that rendered it. 12 O.S.2001 § 1031.

**57.** *See supra* note 56. The terms of 12 O.S.2001 § 1031 provide the district court the authority to vacate *or modify its own judgments* by granting a new trial, as authorized by the terms of 12 O.S. 2001 § 2004(C), when it is determined the defendant had no actual notice of the proceedings at the time the judgment, decree, or order was entered, or for "mistake, neglect, or omission of the clerk or irregularity in obtaining a judgment or order." *Id.* § 1031(3). The terms of 12 O.S. 2001 § 709 additionally provide: "All orders and judgments rendered in the absence of proof of the notice herein required and in violation of the provisions of this section shall be void, and the court *shall on its own motion vacate and set aside*

same when the same is brought to its attention." (emphasis added).

**58.** *Autry v. District Court*, 1969 OK 159, ¶ 5, 459 P.2d 865, 867 (the exercise of concurrent jurisdiction is governed by the principle of priority—the court that first exercises jurisdiction acquires it to the exclusion of others); *Woolley v. Shaw*, 1943 OK 55, ¶ 29, 136 P.2d 398, 403 (when two courts of concurrent jurisdiction attempt to take cognizance over the same property, the court first asserting its power has exclusive cognizance); *Citizens' Trust Co. v. Bird*, 1933 OK 139, ¶ 9, 19 P.2d 577, 579 (when a court exercises jurisdiction over specific property, another court may not deprive it of the power to render a final decree in the case by taking from the latter's control of the subject matter of the suit).

**59.** The terms of 58 O.S.Supp.1997 § 1(C) provide:

The district court which has jurisdiction and venue of the administration of any estate is granted unlimited concurrent jurisdiction and venue to hear and determine:
 1. In whom the title to any property is vested, whether the property is real, personal, tangible, intangible, or any combination thereof;
 2. Rights with respect to such property as to all persons and entities;

**60.** The terms of 58 O.S.2001 § 7 provide: "The district court ... shall have jurisdiction coextensive with the State in the settlement of the estate of the decedent and the sale of distribution of his real estate and *excludes the jurisdiction of the district court of every other county*." (emphasis added).

**61.** *See supra* note 12.

vested with jurisdiction and its venue stood extended. Because the Lincoln County tribunal's post-probate exercise of power was limited to the mineral interest located within that county, its authority was confined to (1) declaring the Craig County final distribution decree facially void *pro tanto* (to the extent of the mineral interest's distribution that was effected *sans* due notice) and (2) removing the flawed decree's cloud over the contested Lincoln County mineral interest. Once condemned as facially void *pro tanto*, the probate decree could then be reconsidered, at its venue in Craig County, for a new, facially valid redistribution.[62] In quieting the mineral interest's title (in accordance with the terms of the mother's will) *the Lincoln County court usurped the Craig County tribunal's exclusive probate jurisdiction.* To the extent of that usurpation the Lincoln County court acted *coram non judice.*[63]

 ¶ 26 A suit to quiet title is brought by a party who presses a claim that stands in some controversy with that of another.[64] As the Craig County's mineral interest distribution is facially void *pro tanto*, *neither the two brothers nor their sister could invoke that court's decree to claim title to the affected probate asset. None of them was capable of pressing (before the Lincoln County tribunal) a superior (or unclouded) title to that asset of the mother's estate.*[65] In short, the *pro tanto* facial invalidity of the Craig County probate decree was the sole issue the Lincoln County court could adjudicate.

## V

## SUMMARY

¶ 27. The probate distribution hearing triggered by a personal representative's filing of a final account is an adversarial judicial proceeding requiring a constitutionally adequate notice to all affected persons. The notice to be given must inform every party that its interest stands before a tribunal for adjudication and afford that party an opportunity to interpose a defense against the pressed result. To meet this standard the notice to be given must be reasonably calculated not only to inform the person of the hearing's logistics—date, time, and place—but also to provide sufficient information that will allow the adverse party intelligently to ascertain what issues the hearing will address, what rights are at stake, and what one stands to lose upon default through non-attendance.

¶ 28 Whenever a tribunal assumes probate cognizance of an estate, it acquires over its assets exclusive jurisdiction that is superior to that of any other tribunal in the state. While the Lincoln County District Court was not incorrect in declaring the Craig County probate decree facially void *pro tanto* (for want of constitutionally adequate notice), it lacked the power to proceed farther and quiet the mineral interest's title. To that extent it usurped the Craig County tribunal's exclusive jurisdiction over a probate asset.

¶ 29 The Court of Civil Appeals' opinion is vacated; the decision of the Lincoln County District Court is affirmed in part and reversed in part; and the cause is remanded

---

**62.** *See supra* note 57.

**63.** A case is said to be *coram non judice* when the court in which it is brought has no jurisdiction to settle the dispute. A decision *coram non judice* is legally invalid. *City of Lawton v. Int'l Union of Police Ass'ns, Local 24*, 2002 OK 1, ¶ 8 n. 20, 41 P.3d 371, 375 n. 20; *Collins v. Mid-Continent Pipeline Co.*, 1999 OK 56, ¶ 9 n. 8, 6 P.3d 1050, 1053 n. 8. For the definition of *coram non judice*, see BLACK'S LAW DICTIONARY at 338 (7th ed.1999).

**64.** *Ballinger v. Sarkeys*, 1961 OK 59, ¶ 18, 360 P.2d 515, 518 (one who brings a quiet title suit must allege and prove that he is the owner of either the legal or equitable title. Failing that, it is immaterial what title the opposing party has or

claims); *Cherry v. Weathers*, 1945 OK 343, ¶ 3, 164 P.2d 615, 616.

**65.** The successful outcome of a post- and extra-probate (collateral) Lincoln County contest over the portion of a final decree that distributed a bequeathed mineral interest *does not by itself invest* the victorious contestants *with a muniment of title* to any part of the affected probate asset as its testatorially intended beneficiaries. *Carter v. Foote*, 1961 OK 39, ¶ 17, 361 P.2d 215, 218; *Yeldell v. Moore*, 1954 OK 260, ¶ 10, 275 P.2d 281, 283; *Smith v. Reneau*, 1941 OK 99, ¶ 10, 112 P.2d 160, 162, 188 Okl. 629; In Re Douglas' Estate, 1939 OK 222, ¶ 11, 90 P.2d 35, 38, 185 Okl. 25; *Bell v. Davis*, 1914 OK 365, ¶ 4, 142 P. 1011, 1013, 43 Okl. 221.

for further proceedings to be consistent with today's pronouncement.

¶ 30 WATT, C.J., and HODGES, LAVENDER, HARGRAVE, SUMMERS, BOUDREAU and WINCHESTER, JJ., concur.

¶ 31 KAUGER, J., concurs in result.