OSCN Found Document:HARMON v. ALEXANDER

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 HARMON v. ALEXANDER
2023 OK CIV APP 7
526 P.3d 1176
Case Number: 119365
Decided: 05/09/2022
Mandate Issued: 03/09/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2023 OK CIV APP 7, 526 P.3d 1176

 

ASHLEY RENEE HARMON, Petitioner/Appellee/Counter-Appellant,
v.
THERONE TRENT ALEXANDER, Defendant/Appellant/Counter-Appellee.

APPEAL FROM THE DISTRICT COURT OF
CANADIAN COUNTY, OKLAHOMA

HONORABLE CHARLES GASS, TRIAL JUDGE

REVERSED

Heather M. Cline, Jeff L. Cline, CLINE LAW OFFICE, Oklahoma City, Oklahoma, for Petitioner/Appellee/Counter-Appellant

Steven M. Ditto, STEVEN M. DITTO, P.C., Oklahoma City, Oklahoma, for Defendant/Appellant/ Counter-Appellee

JANE P. WISEMAN, PRESIDING JUDGE:

¶1 Therone Trent Alexander appeals the trial court's order denying his motion to vacate a final protective order and his motion for new trial. We are asked to determine whether the trial court abused its discretion in denying these motions. Ashley Renee Harmon appeals the trial court's decision awarding attorney fees. After review, we conclude it was an abuse of discretion not to vacate the protective order, and the attorney fee award to Harmon was therefore in error. In accord with these conclusions, the decisions are reversed.

FACTS AND PROCEDURAL BACKGROUND

¶2 Harmon filed a petition on October 21, 2019, seeking a protective order on behalf of herself and her two children against Alexander, her former spouse. The basis for the petition was a threat Harmon alleged Alexander made against her on October 19, 2019. Harmon claimed that, while their children were present, Alexander threatened to put a bullet in her head. She stated in the petition, "There has been a history of abuse directed towards [her] that started in 2009." Harmon filed the petition in Canadian County where she resided and where she alleged the domestic abuse occurred. The Canadian County court issued an emergency order of protection the day of the petition.

¶3 An alias emergency order of protection was filed on October 30, 2019, setting a hearing on December 4, 2019. The return of service shows the order was served on Alexander on November 12, 2019.

¶4 A final order of protection, filed on December 4, 2019, states that the order of protection for domestic abuse/stalking would remain in effect until December 4, 2024. The order prohibited Alexander from having any contact with Harmon and their two children. The court issued an amended final order on December 13, 2019, in which it suspended Alexander's visitation with the children until another court assumes jurisdiction and modifies it.

¶5 Alexander filed on January 3, 2020, a motion to vacate and motion to transfer. He stated that the parties were divorced in Rogers County in May 2013, and that on May 23, 2019, "Ashley Rene Harmon[] re-invoked the jurisdiction of the Rogers County Court by filing a Combined Motion to Modify Visitation and Application for Emergency Ex Parte Relief." Alexander attached a copy of Harmon's motion in which she alleged that Alexander's former girlfriend contacted her and informed her of physical abuse Alexander inflicted on the former girlfriend, some of which occurred in front of the children. Harmon also alleged that Alexander is homeless. Alexander provided a copy of an order from the Rogers County District Court denying the application for emergency relief because Harmon "has not proven by preponderance of evidence that domestic violence occurred in the presence of the minor children of the parties hereto." In his motion, Alexander stated that at the hearing on the protective order he, "announced to the Court that there was another action [] pending for modification of custody and visitation in Rogers County, Oklahoma." The court proceeded with the hearing on December 4, 2019, and issued a five-year order of protection, and then nine days later, issued an amended order suspending visitation. Alexander alleged that Harmon filed an application in Rogers County for change of venue, but the Rogers County District Court denied the application. Alexander argued the Canadian County District Court was required to transfer the case to Rogers County pursuant to 22 O.S. § 60.3(D).[1]

¶6 The Canadian County Court found that having "committed error under 22 O.S. § 60.3," it vacated the final victim order, entered an emergency protective order providing that a hearing date should be set by Rogers County, and transferred the matter to Rogers County.

¶7 On August 31, 2020, Harmon filed in Canadian County a motion to reinstate the final protective order and submitted a copy of a Rogers County District Court order transferring the protective order case back to Canadian County. Harmon alleged that the underlying domestic case was also transferred back to Canadian County on July 13, 2020. On September 9, 2020, a final protective order was issued by the Canadian County Court, to remain in effect until September 9, 2025. A "Sheriff's Return" indicated that service on Alexander was attempted five times but no service was made.

¶8 Alexander filed a motion to vacate and/or motion for new trial on September 24, 2020. Steven Ditto filed an entry of appearance for Alexander. In the motion, Alexander stated that his "current attorney was retained to vacate and/or transfer the Protective Order proceeding to Rogers County on the grounds of improper venue." Alexander claimed:

On March 17, 2020, this Court entered its Order (subsequently filed June 15, 2020) . . . sustaining [Alexander's] motion pursuant 22 O.S. §60.3 and vacating the Final Protective Order entered on
December 4, 2019, as amended on December 13, 2019. The Court reinstated the Emergency Protective Order entered on October 21, 2019, by issuing a new Emergency Order of Protection on March 17, 2020. [Alexander's] current attorney's representation accordingly ended on the filing of the final, appealable order (12 O.S. §953) transferring the proceeding on July 31 [sic], 2020.

¶9 According to Alexander, the Rogers County District Court never resolved Harmon's motion to modify, and Harmon filed an application to change venue to Canadian County on October 30, 2019. The Rogers County District Court did not grant the application for change of venue until July 13, 2020. The order transferring the case stated that it should be set on Judge Gass's docket on or before September 14, 2020. On August 31, 2020, Harmon filed a motion to reinstate the final protective order entered on December 4, 2019. Alexander alleged the motion to reinstate was mailed to his attorney, but his attorney told Harmon's counsel that he no longer represented Alexander. The Canadian County Court scheduled the hearing for September 9, 2020. Alexander said he was never served with the motion to reinstate, and no summons was issued or served on him, nor was he served with the final order. Alexander noted the following court minute was entered on September 15, 2020: "CRT MIN. (LATE MINUTE FROM 09-09-2020) PLAINTIFF WAS PRESENT AND REPRESENTED BY HEATHER CLINE. DEFT WAS NOT PRESENT. JUDGE ENTERED A FIVE YEAR VPO IN THIS CASE. JUDGE GASS (BY JAMIE MCGLOTHIN, SEC BAILIFF)." Alexander said, "That, in reliance upon the Order issued by the Court in Rogers County, [he] appeared at the office of Judge Gass on September 14, 2020, at 9:00 a.m., but apparently no one was available."

¶10 Harmon filed a motion for attorney fees pursuant to 22 O.S. § 60.2(C)(1) stating she incurred $7,125 in attorney fees. The trial court denied Alexander's motion to vacate and motion for new trial but reserved Harmon's request for attorney fees. In his response to that request, Alexander did not dispute the reasonableness of the hourly rate or the reasonableness of the number of hours claimed by Harmon's counsel, but he "does object to certain tasks which were made necessary by [Harmon's] conduct and failure to properly advise the court of existing statutory authority."

¶11 The trial court awarded Harmon $3,562.50 for attorney fees and ordered Alexander to pay that amount within 30 days.

¶12 Alexander timely appealed the trial court's order denying his motion to vacate and his motion for new trial. Harmon counter-appealed the trial court's order awarding attorney fees.

STANDARD OF REVIEW

¶13 "The standard of review for both denial of a motion for a new trial and denial of a motion to vacate or modify a final judgment is abuse of discretion." In re K.S., 2017 OK 16, ¶ 7, 393 P.3d 715. This Court also reviews appeals from Protection from Domestic Abuse Act proceedings for an abuse of discretion. Curry v. Streater, 2009 OK 5, ¶ 8, 213 P.3d 550. "Under an abuse of discretion standard, the appellate court examines the evidence in the record and reverses only if the trial court's decision is clearly against the evidence or is contrary to a governing principle of law." Id. Before reversing a decision for an abuse of discretion, we are required to "find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence." Id.

¶14 The reasonableness of the amount of an attorney fee award is also reviewed for abuse of discretion. State ex rel. Comm'rs of the Land Office v. Stephens & Johnson Operating Co., Inc., 2020 OK 84, ¶ 5, 474 P.3d 869. "[W]here the question of whether an attorney fee is authorized by law is presented, such a claim is reviewed de novo. Under this standard, this Court affords a 'non-deferential, plenary and independent review' of the trial court's legal ruling." Id.

ANALYSIS

¶15 Alexander asserts that the trial court erred when it failed to (1) require Harmon to file a verified petition and summons as required by 12 O.S. § 1031.1; (2) require Harmon to proceed by summons pursuant to 12 O.S. § 2005(A)(1); (3) follow the Protection from Domestic Abuse Act; and (4) allow him to respond before issuing the emergency protective order. Harmon claims trial court error in failing to award her substantially all of her attorney fees pertaining to the change of venue. After review, for the reasons discussed, we conclude it was an abuse of discretion to deny Alexander's motion to vacate and/or motion for new trial, requiring reversal. Based on that conclusion, the order awarding attorney fees to Harmon must also be reversed.

I. Harmon was not required to file a verified petition and summons when she requested reinstatement of the protective order. 

¶16 The history of the issuance of the final order of protection here is less than straightforward. The amended final order was entered in Canadian County on December 13, 2019, and then Alexander asked that the order be vacated and transferred to Rogers County because there was an ongoing domestic case pending there. The Canadian County District Court vacated the final order, reinstated the emergency protective order, and transferred the case to Rogers County District Court. The Rogers County District Court eventually sent both the protective order and domestic cases back to Canadian County. At Harmon's request, the Canadian County Court reinstated the final protective order.

¶17 On appeal, Alexander argues that by asking the court to reinstate the protective order, Harmon was required to file a petition pursuant to 12 O.S. § 1033 because more than 30 days had passed since the order's entry. Alexander states Harmon sought to "correct, open, modify, or vacate" an order pursuant to 12 O.S. Supp. 2020 § 1031.1(A) which provides, "A court may correct, open, modify or vacate a judgment, decree, or appealable order on its own initiative not later than thirty (30) days after the judgment, decree, or appealable order prepared in conformance with Section 696.3 of this title has been filed with the court clerk." This subsection, however, applies not to Harmon, but to a court who on in its own initiative seeks to correct, open, modify or vacate its judgment, decree, or appealable order. Subsection B applies where a party seeks "to correct, open, modify, or vacate the judgment, decree, or appealable order." 12 O.S. Supp. 2020 § 1031.1(B). Alexander maintains that Harmon was required to comply with § 1031.1(C), which states that a proceeding to vacate or modify a judgment, decree, or appealable order entered more than 30 days before the filing of the proceeding to vacate or modify must be filed in accordance with 12 O.S. § 1033. Section 1033 provides:

If more than thirty (30) days after a judgment, decree, or appealable order has been filed, proceedings to vacate or modify the judgment, decree, or appealable order, on the grounds mentioned in paragraphs 2, 4, 5, 6, 7, 8 and 9 of section 1031 of this title, shall be by petition, verified by affidavit, setting forth the judgment, decree, or appealable order, the grounds to vacate or modify it, and the defense to the action, if the party applying was defendant. On this petition, a summons shall issue and be served as in the commencement of a civil action.

12 O.S.2011 § 1033.

¶18 We agree with Harmon, however, and conclude that a petition and summons pursuant to § 1033 were not required because her motion to reinstate the protective order was not a post-judgment motion contemplated by § 1031.1. When she filed her motion to reinstate, there was no final protective order to be corrected, opened, modified or vacated. Only an emergency order, not a final protective order, existed. Accordingly, we reject Alexander's contention that Harmon was required to file a verified summons and petition.

II. Harmon was not required to serve Alexander by summons pursuant to 12 O.S. § 2005(A).

¶19 Nor was Harmon required to proceed by summons pursuant to 12 O.S.2011 § 2005, which provides in relevant part:

A. SERVICE: WHEN REQUIRED. Except as otherwise provided in this title, every order required by its terms to be served, every pleading subsequent to the original petition unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party or any other person unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, and similar paper shall be served upon each of the parties. No service need be made on parties in default for failure to appear except that:

1. Pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Section 2004 of this title . . . .

Although Alexander correctly cites the applicable law for service in civil cases, this statute is not applicable.

¶20 As Harmon advocates, the Protection from Domestic Abuse Act, 22 O.S. §§ 60-60.20, governs her request for a protective order. She cites Baker v. Baker, 1995 OK CIV APP 111, 904 P.2d 616, in which this Court stated:

We find that the Protection From Domestic Abuse Act, and not the general provisions of the Oklahoma Pleading Code, prescribes the specific rules of procedure and pleading to be followed in all cases in which emergency protection is sought in district court from alleged acts of domestic abuse, stalking, or harassment, by family or household members of the victim, as defined by the Act. Unless those specific procedures are followed to notify a party of the pendency of allegations against her, and the nature of any relief sought, the trial court lacks authority to amend the pleadings to conform to evidence of conduct allegedly committed by that party. As a result, a protective order against the party whose due process rights have been violated may not be issued.

Id. ¶ 16. On the other hand, "Where the Protection from Domestic Abuse Act mentions no such exemption from the Code, parties in proceedings for protective orders under the Act are entitled to the procedures governed by the Oklahoma Discovery Code." Sunderland v. Zimmerman, 2019 OK CIV APP 27, ¶ 17, 441 P.3d 179. The Sunderland Court held, "The trial court's holding that the Discovery Code did not apply to proceedings for protective orders under the Protection from Domestic Abuse Act was contrary to governing principles of law and was therefore an abuse of discretion." Id. ¶ 19.

¶21 The Protection from Domestic Abuse Act, however, contains its own procedure for service at 22 O.S. Supp. 2020 § 60.4(A)(1):

A copy of a petition for a protective order, any notice of hearing and a copy of any emergency temporary order or emergency ex parte order issued by the court shall be served upon the defendant in the same manner as a bench warrant. In addition, if the service is to be in another county, the court clerk may issue service to the sheriff by facsimile or other electronic transmission for service by the sheriff and receive the return of service from the sheriff in the same manner. Any fee for service of a petition for protective order, notice of hearing, and emergency ex parte order shall only be charged pursuant to subsection C of Section 60.2 of this title and, if charged, shall be the same as the sheriff's service fee plus mileage expenses.

Because the Protection from Domestic Abuse Act has its own service provision, we conclude that Harmon was not required to serve Alexander pursuant to 12 O.S.2011 § 2005.

III. Alexander Received Proper Notice of the First Hearing on the Later-Vacated Final Protective Order.

¶22 Alexander claims he was never personally served with a protective order before the December 4, 2019, hearing or with the motion to reinstate. He admits, however, that he appeared at the December 4th hearing. By appearing for the hearing, any issues with lack of service were no longer extant because Alexander had actual notice of the hearing. "Appearance is defined as 'coming into court as party to a suit.' Black's Law Dictionary 89 (5th ed.1979)." Schweigert v. Schweigert, 2015 OK 20, ¶ 12, 348 P.3d 696. If one appears before the court, "the person is submitting to the jurisdiction of the court as if the person had been served." Id. That person "cannot then contest the sufficiency of the proceeding's notice." Id. Although this is not a general civil case, we conclude that the same principle applies here. Alexander plainly had actual notice of the hearing and he attended the hearing. We cannot accede to his claim of lack of service of the petition for the original protective order under circumstances showing he knew of the hearing date and was present in court for the hearing.

IV. It was an abuse of discretion not to vacate the final protective order because Alexander did not receive notice.

¶23 Alexander also asserts that he was never properly served with the motion to reinstate, claiming that Harmon "never properly served" him with her motion to reinstate and instead "relied upon a certificate of regular mail in the first pleading filed after Canadian County had sent the entire Protective Order file to Rogers County." According to Alexander, "there is absolutely no authority which would indicate that [his] current attorney was in fact his attorney on August 31, 2020, the date that the Motion to Reinstate was filed."

¶24 Title 22 O.S. Supp. 2020 § 60.4(G) provides:

3. Upon the filing of a motion by either party to modify, extend, or vacate a protective order, a hearing shall be scheduled and notice given to the parties. At the hearing, the issuing court may take such action as is necessary under the circumstances.

The procedural history of this case requires some studious untangling. Even if we view Harmon's motion to reinstate the previously vacated final protective order as a motion to modify, extend, or vacate that protective order pursuant to § 60.4, Alexander was still entitled to notice.

¶25 Harmon claimed she sent the motion to Steven Ditto, the attorney of record, via first class mail. According to Harmon, "Upon receipt of the motion, Defense counsel sent a 1-sentence email stating, 'I no longer represent Mr. Alexander.'" That email, dated September 1, 2020, also stated: "cc: Trent Alexander," but there is no other indication that Alexander was notified. Harmon claims Ditto's failure to file a motion to withdraw should be determinative and she gave proper notice to Alexander's attorney.

¶26 Harmon filed a motion to reinstate the final protective order on August 31, 2020. The certificate of mailing states Harmon's attorney sent the motion by first class mail that same day. The matter was set for hearing on September 9, 2020. Harmon acknowledged that on September 1, 2020, her attorney received an e-mail from Ditto stating he no longer represented Alexander. Despite this missive, Harmon, it appears, took no action to notify Alexander of the September 9, 2020, hearing date.

¶27 Although Harmon maintains that Ditto did not withdraw as counsel, this does not end our inquiry. The protective order case had been transferred to another county and essentially the matter was, at that juncture, concluded in Canadian County. Thus, it was not at all unreasonable for Ditto to think that he had represented Alexander to the conclusion of the Canadian County protective order case.

¶28 In an order entered on July 13, 2020, and filed on July 23, 2020, the Rogers County District Court transferred the family division case to Canadian County after a hearing on Harmon's application for change of venue. The order provided that the "cause of action shall be transferred to the District Court in and for Canadian County, to be set upon Judge Gass' docket on or before September 14, 2020, at 9:00 a.m." In his motion to vacate, Alexander stated, "That, in reliance upon the Order issued by the Court in Rogers County, [he] appeared at the office of Judge Gass on September 14, 2020, at 9:00 a.m., but apparently no one was available." He claimed, "Through further investigation with local counsel in another case, [he] discovered that a Final Five-Year Protective Order had been entered."

¶29 The order to transfer the protective order case from Rogers County to Canadian County was filed on August 18, 2020. And, the hearing date referenced in the order transferring the domestic case was not a date certain. The hearing on the final protective order was held on September 9, 2020. The motion to vacate or motion for new trial was filed on September 24, 2020. This timeline shows that Alexander filed the motion to vacate just 15 days after entry of the order.

¶30 Alexander claims that due process requires that he receive notice of the hearing on the final protective order.

While the core element of due process is the right to be heard, that element would have no value unless advance notice is afforded of the hearing at a meaningful time and in a meaningful manner. The person to be affected must be fairly and timely apprised of what interests are sought to be reached by the triggered process. Notice and opportunity to be heard must be provided in such a way that a person can intelligently decide in advance whether to appear at the hearing and contest the matters in issue or acquiesce in their in absentia resolution and assume the risk from consequences attendant upon a default.

Booth v. McKnight, 2003 OK 49, ¶ 18, 70 P.3d 855 (footnotes omitted). The record does not reflect that Alexander was afforded notice of the hearing in a meaningful time and manner so that he could decide whether to appear and be heard before a final protective order was entered against him.

¶31 A further problem exists with the order itself. The December 4, 2019, order, and the amended final order issued December 13, 2019, and filed December 30, 2019, both contain a finding of domestic abuse or stalking. The final order of protection filed September 9, 2020, contained no such finding.

¶32 Pursuant to 22 O.S. Supp. 2020 § 60.2(A), "A victim of domestic abuse, a victim of stalking, a victim of harassment, a victim of rape . . . may seek relief under the provisions of the Protection from Domestic Abuse Act." In her petition for a protective order, Harmon alleged Alexander had threatened her with imminent physical harm; she did not allege he had stalked, harassed or assaulted her.

¶33 The trial court's final order does not contain a finding of domestic abuse. The court found it had jurisdiction over the parties and subject matter, Alexander had notice and an opportunity to be heard, and "a Final Order of Protection is necessary to protect the Petitioner(s) pursuant to the Protection from Domestic Abuse Act (22 O.S. §60.1 et seq.)". The form-based order offers two check boxes to indicate the court's finding: "1) FINAL ORDER--NO FINDING OF DOMESTIC ABUSE AND/OR STALKING OF INTIMATE PARTNER OR CHILD;" and "2) FINAL ORDER--DOMESTIC ABUSE AND/OR STALKING." The second option has a provision prohibiting the defendant from possessing a firearm or ammunition. The trial court checked only the first box, and thus on the face of the order, the trial court made no finding of stalking or domestic abuse but still prohibited Alexander from engaging in listed activities. Because Harmon claimed only that Alexander "caused or attempted to cause physical harm," the trial court was limited to entering a protective order on that basis. But the trial court found no domestic abuse, the only basis on which Harmon sought a protective order. Without a finding of domestic abuse, there was no basis to enter a five-year protective order. The facts do not support a finding of domestic abuse or stalking. But without this finding, refusal to vacate this insufficient five-year protective order was therefore an abuse of discretion.

V. The attorney fee award cannot stand.

¶34 We conclude the trial court erred in awarding attorney fees. Harmon sought the award pursuant to 22 O.S. Supp. 2020 § 60.2(C)(1):

The court may assess court costs, service of process fees, attorney fees, other fees and filing fees against the defendant at the hearing on the petition, if a protective order is granted against the defendant; provided, the court shall have authority to waive the costs and fees if the court finds that the party does not have the ability to pay the costs and fees.

Because the refusal to vacate the protective order for lack of a finding of domestic abuse or stalking was error, as well as the lack of notice to Alexander of the hearing on the final protective order, the attorney fee award must also be reversed.

CONCLUSION

¶35 We conclude the trial court abused its discretion in failing to vacate the protective order due to the lack of notice and the fact that, despite its finding of no domestic abuse or stalking, it nonetheless granted the protective order. Because the protective order was improperly granted, the trial court's decisions in this appeal are reversed.

¶36 REVERSED. 

RAPP, J., and BLACKWELL, J., concur.

FOOTNOTES

[1] Title 22 O.S. Supp. 2020 § 60.3(D) provides:

If an action for divorce, separate maintenance, guardianship, adoption or any other proceeding involving custody or visitation has been filed and is pending in a county different than the county in which the emergency ex parte order was issued, the hearing on the petition for a final protective order shall be transferred and held in the same county in which the action for divorce, separate maintenance, guardianship, adoption or any other proceeding involving custody or visitation is pending.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1995 OK CIV APP 111, 904 P.2d 616, 66 OBJ 3207, 
Baker v. Baker
Discussed

 
2019 OK CIV APP 27, 441 P.3d 179, 
SUNDERLAND v. ZIMMERMAN
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
2003 OK 49, 70 P.3d 855, 
BOOTH v. McKNIGHT
Discussed

 
2009 OK 5, 213 P.3d 550, 
CURRY v. STREATER
Discussed

 
2015 OK 20, 348 P.3d 696, 
SCHWEIGERT v. SCHWEIGERT
Discussed

 
2017 OK 16, 393 P.3d 715, 
IN THE MATTER OF K.S.
Discussed

 
2020 OK 84, 474 P.3d 869, 
STATE OF OKLA. ex rel. COMMISSIONERS OF LAND OFFICE v. STEPHENS AND JOHNSON OPERATING CO., INC.
Discussed

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 953, 
Final Order Defined
Cited

 
12 O.S. 1031.1, 
Authorization to Correct, Open, Modify or Vacate Judgments - Time - Notice - Costs
Discussed at Length

 
12 O.S. 1033, 
Proceedings to Vacate or Modify Judgment or Order - Grounds - by Petition - Verification - Summons
Discussed at Length

 
12 O.S. 2005, 
Service and Filing of Pleadings and Other Papers
Discussed at Length

Title 22. Criminal Procedure

 
Cite
Name
Level

 
22 O.S. 60.1, 
Definitions
Cited

 
22 O.S. 60.2, 
Protective Order - Petition - Form - Filing Fee - Preparation - Protection of Animal
Discussed at Length

 
22 O.S. 60.3, 
Emergency Ex Parte Order - Hearing
Discussed at Length

 
22 O.S. 60.4, 
Hearing - Service of Process - Emergency Orders - Protective Orders - Period of Relief - Title to Real Property
Discussed

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA